# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

|  |  |  |
|---|---|---|
| DALE HARTKEMEYER (AKA SEIGEN) | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00336-JMS-MJD |
| | ) | |
| WILLIAM P. BARR, ET AL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF RICK WINTER

I, Rick Winter, do hereby declare and state as follows:

1.      I am employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP"), as Regional Counsel for the BOP's North Central Region.  I have held this position since October 2016.  I have been employed by the BOP since 1994.

2.      The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.

3.      The BOP, under the supervision of the United States Marshals Service, is responsible for implementing federal death sentences.  See 18 U.S.C. § 3596(a); 28 C.F.R. Part 26.  The BOP undertakes its role in accordance with the BOP Execution Protocol, see Ex. A-1, unless the Director or his designee determines that deviation is required.  Wesley Ira Purkey is a condemned inmate whose execution is scheduled to occur on July 15, 2020,[1] at the

---

[1] On July 2, 2020, in *Purkey v. United States*, No. 19-3318, the United States Court of Appeals for the Seventh Circuit temporarily stayed Mr. Purkey's July 15, 2020, date of execution pending issuance of that court's mandate in that case or as specified in any subsequent order of that court.

United States Penitentiary at Terre Haute, Indiana (USP Terre Haute).

4.     I am aware that Plaintiff, Reverend Dale Hartkemeyer (AKA Seigen), has been designated by Mr. Purkey as Mr. Purkey's spiritual advisor for purposes of the execution on July 15, 2020. 28 C.F.R. § 26.4(c)(3)(i).  Mr. Purkey has requested Rev. Hartkemeyer's presence before, during, and after the execution itself.  See Ex. A-2 (BOP letter to Mr. Purkey dated July 6, 2020).

5.     I am aware that in the above referenced lawsuit, Rev. Hartkemeyer alleges that because of his age and health conditions and because of the number of BOP staff members, media, and visitors that are expected to be present at the execution, he would be subject to an unacceptably high risk of exposure to COVID-19 if he chooses to visit Mr. Purkey and attend his execution as compelled by his religious obligation.

6.     However, despite the large number of individuals expected to be present at Mr. Purkey's execution, Rev. Hartkemeyer will have very limited interactions with the vast majority of them.  There are also numerous mitigation measures in place to avoid the spread of COVID-19 to Rev. Hartkemeyer.

7.     The Terre Haute Federal Correction Complex (FCC Terre Haute) consists of USP Terre Haute, as well as a Federal Correctional Institution (FCI Terre Haute) and a prison camp. Mr. Purkey is housed at USP Terre Haute's Special Confinement Unit (SCU).  There have been zero cases of COVID-19 in the SCU, with two inmates having been tested. Staff at FCC Terre Haute are required to pass a temperature check and symptom screening daily before being allowed on the grounds of FCC Terre Haute.  As of July 2, 2020, ninety two staff members at FCC Terre Haute have been tested for COVID-19.  Of those, one staff member at the FCI previously tested positive but has recovered.  At the USP, no staff members have tested positive for COVID-19.  No FCC staff members are currently positive

for COVID-19.  As for the inmate population, 264 USP inmates have completed tests.  Four USP inmates are currently positive for COVID-19.  Tests have been conducted on 141 FCI inmates; one FCI inmate is currently positive.  *See* https://www.bop.gov/coronavirus/.  All BOP staff are required to wear face masks. BOP has no plans to conduct COVID testing on individuals involved in the execution in advance of the execution.  FCC Terre Haute will continue its screening procedures.

8.  If Rev. Hartkemeyer chooses to visit Mr. Purkey in the days prior to the execution, that visitation will occur in the SCU.  I understand that Rev. Hartkemeyer will need to drive approximately 60 miles from his home to FCC Terre Haute.  Upon his arrival at FCC Terre Haute, he will be given the opportunity to utilize Personal Protective Equipment ("PPE"), in the form of a surgical face mask, gloves, a gown, and a plastic face shield.  He will be escorted through security by BOP staff wearing face masks to a SCU visiting room only utilized by visitors of SCU inmates.  The visiting room allows non-contact visitation—*i.e.*, the inmate is separated from his visitor by a partition—and is sanitized after each use.  Once inside the USP, Rev. Hartkemeyer will also be given access to hand sanitizer and a restroom with a sink and hand soap.

9.  During any such visit, Rev. Hartkemeyer will have no interaction with any other inmates housed at SCU or elsewhere.  Additionally, Rev. Hartkemeyer will have no interaction with other visitors or members of the public at the SCU because regular visitation remains suspended due to COVID-19.  If the other inmates scheduled for execution also have visitors, such visits will take place in separate areas.

10.  If Rev. Hartkemeyer chooses to attend the execution, his interaction with BOP staff and other individuals will be limited.  He will not have direct interaction with, nor be near, the vast majority of individuals expected to be present for Mr. Purkey's execution.  His only

possible interaction with members of the public may be with Mr. Purkey's legal team, who, like other witnesses, will be provided PPE if they desire.

11. As to Plaintiff's interaction with BOP employees, while the execution team consists of approximately 40 BOP staff members, the vast majority of them have assignments in areas other than the rooms in which Rev. Hartkemeyer will be located.  Similarly, while approximately 100 BOP staff members and approximately 50 members of specialized teams will have various roles in the overall security of FCC Terre Haute, their duties will not cause them to have any interaction with Rev. Hartkemeyer.  Rev. Hartkemeyer will only have interactions with those security officers in the specific areas in which he needs to be.  Furthermore, Rev. Hartkeymeyer should have no interaction with the victim's witnesses, media, or demonstrators, as those groups are separated from each other by design.  See Ex. A-1 at 23, 26-27.

12. On the day of his execution, Mr. Purkey will be taken from the SCU to the execution facility, which is a separate facility from USP Terre Haute.  Rev. Hartkemeyer will be given the opportunity to visit Mr. Purkey at the execution facility.  In order to do so, he will again be met at a designated area and will be given the opportunity to utilize PPE in the form of a surgical face mask, gloves, a gown, and a plastic face shield.  He will then be subject to a brief escort to the execution facility where he will be met by a BOP employee who will then escort him throughout the execution facility grounds.  That BOP security escort will wear an N-95 face mask, a face shield, and gloves while in close proximity with Rev. Hartkemeyer.[2]

13. At the execution facility, Rev. Hartkemeyer's visit will again be non-contact.  The

---

[2] BOP cannot supply Rev. Hartkemeyer with an N-95 mask because in order for such a mask to be effective, Rev. Hartkemeyer must be clean shaven and undergo fit testing.

equipment and surfaces in the area of the visit will be disinfected prior to use. At the conclusion of the visit, Rev. Hartkemeyer will be escorted away from the visiting area of execution facility.

14. For the actual execution, Rev. Hartkemeyer's BOP security escort will take him to a room adjacent to the execution room. Shortly prior to curtains opening, his BOP security escort will lead him into the execution room itself for a brief non-contact visit with Mr. Purkey. Rev. Hartkemeyer will then be permitted to remain in the execution room with the assigned BOP security escort during the execution procedure. See Ex. A-2. In addition to Mr. Purkey, Rev. Hartkemeyer, and his security escort, the only other individuals who will be present in the execution room are a United States Marshals' representative and a BOP official—both of whom will be at a social distance from Rev. Hartkemeyer.

15. At the conclusion of the execution, Rev. Hartkemeyer will be given brief access to Mr. Purkey's body and then escorted away from FCC Terre Haute and back to his vehicle.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 6th day of July, 2020.

*Rick Winter (sc)*

Rick Winter
Federal Bureau of Prisons

Exhibit C-1

# BOP EXECUTION PROTOCOL



SENSITIVE – LIMITED OFFICIAL USE ONLY        2019

Federal Bureau of Prisons
Execution Protocol Manual

|  |  | Page |
|---|---|---|
| INTRODUCTION | General Provisions………………………………………… | 4 |
|  | I.      Purpose of Manual……………………………………... | 4 |
|  | II.     Organization…………………………………………….... | 4 |
|  | III.    Cross References……………………………………….. | 4 |
|  | IV.    Procedure………………………………………………… | 4 |
| CHAPTER 1 | Pre-Execution Checklist…………………………………….. | 7 |
|  | I.      General Provisions……………………………………… | 7 |
|  | II.     Establishing an Execution Date………………………… | 7 |
|  | III.    Period of Time Between Establishment Of an Execution Date to Thirty Days Prior to the Execution…………………………………. | 8 |
|  | IV.    Period of Time Between Twenty-Nine To Fourteen Days Prior to the Execution…………………………………………………. | 12 |
|  | V.     Period of Time Between Thirteen to Seven Days Prior to the Execution……………………. | 13 |
|  | VI.    Period of Time Between Six to Three Days Prior to the Execution…………………………. | 13 |
|  | VII.   Period of Time Between Two Days to One Day Prior to the Execution………………………… | 15 |
| CHAPTER 2 | Execution Checklist ……………………………………….. | 17 |
|  | I.      General Provisions……………………………………… | 17 |
|  | II.     Period of Time Between Twenty-Four to Twelve Hours Prior to the Execution…………………... | 17 |
|  | III.    Period of Time Between Twelve to Three Hours Prior to the Execution…………………………. | 18 |
|  | IV.    Period of Time Between Three Hours to Thirty Minutes Prior to the Execution…………………. | 20 |
|  | V.     The Final Thirty Minutes Prior To the Execution……………………………………… | 22 |
|  | VI.    Final Sequences of Events:  Execution……………… | 24 |
| CHAPTER 3 | Post-Execution Checklist…………………………………….. | 26 |
|  | I.      General Provisions……………………………………… | 26 |

|  | II. | Removing Witnesses from the Execution Facility…………………………………………………….. | 26 |
|  | III. | Removal of the Body of the Inmate……………………………………………….. | 27 |
|  | IV. | Site Clean-up…………………….………………… | 27 |
|  | V. | Returning to Routine Operations……………………… | 27 |

| CHAPTER 4 |  | Command Center……………………………………….. | 28 |
|  | I. | General Provisions………………………………….. | 28 |
|  | II. | Location, Role and Function………………………… | 28 |
|  | III. | Command Center Staffing…………………………... | 29 |
|  | IV. | Resources…………………………………………….. | 29 |

| CHAPTER 5 |  | Contingency Planning…………………………………….. | 30 |
|  | I. | General Provisions………………………………….. | 30 |
|  | II. | Specific Procedures………………………………….. | 31 |
|  | III. | Execution Witness Management……………………… | 32 |
|  | IV. | Reservation Security Plan………………………….. | 35 |

| CHAPTER 6 |  | News Media Procedures………………………………….. | 37 |
|  | I. | General Provisions………………………………….. | 37 |
|  | II. | Inmate Interviews……………………………………. | 37 |
|  | III. | Media Orientation……………………………………. | 38 |
|  | IV. | Media Center Operations…………………………... | 39 |
|  | V. | The Execution Information Center…………………... | 45 |

| CHAPTER 7 |  | Stays, Commutations and Other Delays………………… | 47 |
|  | I. | General Provisions………………………………….. | 47 |
|  | II. | Presidential and Judicial Authority To Interrupt Execution…………………………………. | 47 |
|  | III. | Communication of Pardons, Stays, Commutations or Delays…………………………… | 46 |
|  | IV. | Procedures to Implement Last-Minute Stays………………………………………………… | 48 |

| APPENDICES |  | Appendix A – Memorandum of Agreement Between Federal Bureau of Prisons and Witness………………….. | 50 |
|  |  | Appendix B – Media Witness Press Pool Agreement………………………………….. | 51 |
|  |  | Appendix C – Sample Letter to Media……………………. | 52 |

INTRODUCTION:   GENERAL PROVISONS

I.    Purpose of Manual

The purpose of this manual is to outline Federal Bureau of Prisons (BOP) policy and procedures for planning and carrying out the execution of a person convicted of a capital offense.  These procedures should be observed and followed as written unless deviation or adjustment is required, as determined by the Director of the BOP or the Warden.  This manual explains internal government procedures and does not create any legally enforceable rights or obligations.

II.    Organization

This manual provides specific time related checklists for pre-execution, execution and post execution procedures as well as detailed procedures related to the execution process, command center operations, contingency planning, news media procedures, and handling stays, commutations and other delays.

III.    Cross References

A.    Title 28, Code of Federal Regulations, Chapter 1, Part 26

B.    Title 28, Code of Federal Regulations, Chapter 1, Part 1

C.    Correctional Systems Manual – Program Statement 5800.15, Paragraph 803

D.    Searching, Detaining, or Arresting Visitors to Bureau Grounds and Facilities – Program Statement 5510.09

E.    News Media Contacts – Program Statement 1480.05

F.    Accounting Management Manual – Program Statement 2000.02, Chapter 10950

G.    Receiving and Discharge Manual – Program Statement 5800.18

IV.    Procedure

A. The BOP will ensure the execution of a person sentenced to death under federal law by a court of competent authority and jurisdiction be carried out in an efficient and humane manner.

B. The BOP will make every effort in the planning and preparation of an execution to ensure the execution process:

1. Faithfully adheres to the letter and intent of the law;

2. Is handled in a manner that minimizes the negative impact on the safety, security, and operational integrity of the correctional institution in which it occurs and the BOP in general;

3. Accommodates the public's right to obtain information concerning the event;

4. Reasonably addresses the privacy interests of those persons for whom the law and BOP policy require such privacy;

5. Provides sufficient contingency planning to ensure that unforeseen problems can be addressed and overcome;

6. Allows for stays of execution, commutations and other delays in the execution countdown;

7. Provides an opportunity for interested person to exercise their First Amendment rights to demonstrate for or against capital punishment in a lawful manner; and

8. Ensures a firm and adequate response to unlawful civil disobedience, trespass, or other violations of the law by persons attempting to disrupt or prevent the execution.

C. The BOP will seek the arrest and encourage the prosecution of persons, including but not limited to those, who:

1. Violate prohibitions against filming, taping, broadcasting, or otherwise electronically documenting the death of the inmate;

2. Trespass or otherwise enter upon BOP property without proper permission and clearance from the Warden;

3. Participate in unlawful demonstrations;

4. Unlawfully attempt to disrupt, prevent, or otherwise interfere with the execution;

5. Are inmates involved in disruptive, assaultive, or other unlawfully proscribed behavior related to an execution; or

6. Unlawfully threaten, intimidate, or terrorize persons involved in the execution process.

5

D.  BOP staff involved in the execution will make every effort, within the limits of these procedures and the laws of the United States, to:

    1.  Display appropriate levels of professionalism, restraint, and courtesy, in interaction with witnesses, demonstrators, news media, and other persons during the execution process;

    2.  Prevent emotion or intimidation from hindering efforts to carry out assigned duties; and

    3.  Conduct themselves at all times in a manner reflecting the solemnity and sensitivity of the occasion.

E.  BOP staff trained in crisis support will be available for counseling sessions with all personnel participating directly in an execution process, before and after an execution.

CHAPTER 1:    PRE-EXECUTION CHECKLIST

I.    General Provisions

    A.    Purpose of Chapter

        1.    The purpose of this chapter is to provide a checklist of procedures and events that should occur between the period of time prior to the establishment of an execution date and 24 hours prior to the execution.

        2.    Full detail will not be provided for each procedure or event in this chapter.  For detail, refer to specific chapters which follow.

        3.    This chapter covers the following time periods:

            a.    Prior to the execution date being established;

            b.    Establishment of the execution date to thirty days prior to the execution;

            c.    Twenty-nine to fourteen days prior to the execution;

            d.    Thirteen to seven days prior to the execution;

            e.    Six to three days prior to the execution; and

            f.    Forty-eight to twenty-four hours prior to the execution.

    B.    Procedure

        1.    A systematic countdown to an execution must be completed to ensure that all procedures and events necessary to adequately prepare for the execution are completed in a timely manner.

        2.    Absent intervention by the court system or the President as noted in Chapter 7, delays in the countdown process will only occur in extraordinary situations relating to the security and good order of the institution as approved by the Director of the BOP.

II.    Establishing of an Execution Date

After a sentencing hearing is conducted in a United States District Court resulting in a determination that a criminal defendant be sentenced to death for commission of an offense described in a federal statute, and the sentencing judge signs the appropriate Judgment and Order:

A.   Except to the extent a court orders otherwise, the Director of the BOP will designate a date and time for the execution of the sentence. The following individuals/offices will be advised in writing of the execution date: the sentencing judge, Attorney General, Office of the Deputy Attorney General, Office of the Pardon Attorney, the Assistant Attorney General for the Criminal Division, the Chief of the Capital Case Unit, Director for the United States Marshals Service (USMS), the Office for Victims of Crime, Assistant Director for Correctional Programs Division, Assistant Director for General Counsel and Review Division, appropriate Regional Director, United Sates Attorney's Office for the district of conviction, United Sates Attorney's Office for the Southern District of Indiana and Warden of USP Terre Haute.

B.   Under current federal regulations, the date established will be no sooner than 60 days from the entry of the judgment of death (28 C.F.R.§ 26.3 (a)(1)) and notice of it must be given to the defendant no later than 20 days before the execution (28 C.F.R.§ 26.4 (a)). If the date designated passes by reason of a stay of execution, then a new date will be promptly designated by the Director of the BOP when the stay is lifted.

C.   The Warden of USP Terre Haute will notify, in writing, the inmate under sentence of death, of the date designated by the Director for execution at least 90 days in advance. If the designated execution date is stayed, notice of the new execution date must be given no later than 20 days before the execution, if time permits and if not, as soon as possible. If the execution date is set by a judge, the Warden will notify the inmate, in writing, as soon as possible. The Warden will include information concerning the clemency application process in the written notice. Under 28 C.F.R. §1.10(b), a petition for commutation of sentence should be filed no later than 30 days after the inmate has received notification from the Warden of the execution date.

D.   Unless the President interposes, the execution of the sentence will not be stayed on the basis of the inmate filing a petition for executive clemency.


III.   Period of Time Between Establishment of an Execution Date to Thirty Days Prior to the Execution

The following procedures should be completed between the time an execution date is set and 30 days prior to the execution.

A.   Briefing the Inmate

As soon as practical after establishment of the execution date, the Warden at USP Terre Haute or designee, will personally brief the inmate regarding relevant aspects of the execution process including information contained in items C through F of this section.  A briefing sheet outlining these aspects of the execution will be given to the inmate.  If requested, a copy of the briefing sheet will be given to a representative identified by the inmate.  In addition, the Warden will ascertain the inmate's religious preference.

B.   Inmate's Choice of Witnesses

When the inmate is informed by the Warden of the execution date, he/she will be advised that he/she may designate not more than one spiritual adviser, two defense attorneys, and three adult friends or relatives (at least 18 years old) to be present at the execution. The inmate will be asked to submit the list of his/her witnesses to the Warden no later than 30 days after notification of the date of the scheduled execution.

C.   Disposition of Person Property and Accounts

The Warden will review the options available to the inmate for property/account distribution and will ask the inmate to provide instructions, no later than 14 days prior to the execution, concerning the disposition of the personal property and funds in any accounts controlled or administered by the BOP.  If the inmate fails to provide instructions for such disposition, the property/accounts will be disposed on in accordance the Accounting Management Manual and the Receiving and Discharge Manual.

D.   Organ Donation

The inmate's body will not be used for organ donation.

E.   Disposition of Body
The Warden will review options available to the inmate following the release of the body to the Vigo County Coroner.  The Warden will ask the inmate to provide instructions concerning disposition of his/her body no later 14 days prior to the execution.  If the inmate fails to provide instructions, the body will be handled in accordance with the Accounting Management Manual.

F.   Designation of Persons Required to Assist with the Execution

1.   Those persons necessary to carry out the execution will be identified.

a.   The Warden, with the assistance of the Director, USMS, and the Director, BOP, will be responsible for identifying, selecting and obtaining the services of the individuals administering the lethal injection.

b.   The Warden, in conjunction with the Regional Director, is responsible for selection of the local staff involved in perimeter security, transportation, and command post operations, as well as crowd control, support functions and access screening.

2.   All individuals identified for placement in vital or important positions and identified alternates, will be attired in a uniform as determined by the presiding Regional Director.

3.   No officer or employee of the Department of Justice will be required to be in attendance at or participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee.  Staff participation in the execution process must be on a voluntary basis.

G.   Other Approved Witnesses

1.   In addition to the United States Marshal designated by the Director of the USMS (hereafter called the "Designated United Sates Marshal") and the Warden, the following persons will be present at the execution.

a.   Necessary personnel selected by the Designated United States Marshal and the Warden.

b.   Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary.

c.   Not more than the following members of persons selected by the Warden:

(1)   Up to eight citizens (in identifying these individuals, the Warden, no later than 30 days after the setting of an execution date, will ask the United States Attorney for the jurisdiction in which the inmate was prosecuted to recommend up to eight individuals who are victims

10

or victim family members to be witnesses of the execution); and

     (2)    Ten representatives of the press.

2.    No other person will be present at the execution unless such person's presence is granted by the Director of the BOP. No person younger than 18 years of age will witness the execution.

3.    The Warden will notify all witnesses of the date, time and place of the execution as soon as practicable before the designated time of execution.

H.    <u>Contact with the Vigo County Coroner</u>

1.    The Warden will contact the Vigo County Coroner to coordinate the Coroner's role.

2.    The Vigo County Coroner will be requested to provide direction concerning:

    a.    Transfer of custody of the body of the executed individual from the Warden to the Vigo County Coroner;

    b.    Transportation of the body from the Execution Room to the Vigo County Coroner's facility; and

I.    <u>Briefing of Institution Staff</u>

1.    It is necessary to modify prison operations and communicate with local staff throughout the execution process.

2.    Local prison administrators should be briefed by the Warden, as appropriate, on plans for the execution, restrictions on access, crowd control, additional security procedures, etc., on an on-going basis.

3.    As soon as plans begin to evolve which will affect general prison operations, briefings should begin and continue until operations return to normal.

IV.   Period of Time Between Twenty-Nine to Fourteen Days Prior to the Execution

   A.   Witnesses

      1.   To the extent possible, the Warden will develop a final list of citizen and inmate's witnesses.

      2.   All witnesses/participants will be required to sign an agreement prior to being cleared and added to the witness list.  Included in the document will be an agreement to be searched before entering the Execution Facility and not to photograph or make any other visual or audio recording of the execution (see Appendix A.).

   B.   Qualified Person

      The Warden will finalize arrangements for a qualified person to be present at the execution and to declare the executed individual deceased.

   C.   Inmate's Property and Account

      The Warden will finalize arrangements for disposition of the inmate's property and accounts no later than 14 days prior to the scheduled execution date.

   D.   Disposition of Body

      The Warden will finalize arrangements with the Vigo County Coroner for disposition of the body, security for the Vigo County Coroner's vehicle, and transfer of custody of the body in accordance with appropriate state and    local laws.

   E.   Selection of Executioner (s)

      The Warden, with the assistance of the Regional Director, Director and USMS will finalize the selection of executioner(s) and their alternates.

   F.   Training

      The Regional Director will ensure that appropriate training Sessions are held for persons involved in the various aspects of the execution event.

V.  Period of Time Between Thirteen to Seven Days Prior to the Execution

A.  Inmate's Property and Accounts

All paperwork regarding disposition of property and accounts should be completed.

B.  Food Services

At least seven days prior to execution, the Warden or designee will contact the inmate to arrange for his/her last meal.

C.  Purchase of Substances to be Used in Lethal Injection

The Bureau of Prisons will ensure the purchase of lethal substances to be used in the execution. Once purchased, the lethal substance or substances will be secured in the institution until called for by the Regional Director.

D.  Law Enforcement Coordination

1.  The Warden will meet with federal, state, and local law enforcement personnel to coordinate support related to the execution.

2.  Joint practices should be conducted between law enforcement staff involved to ensure coordination and interaction is well defined and understood.

E.  Restrictions on Inmate's Visitors

Beginning seven days prior to the designated date of execution, the inmate will have access only to his/her spiritual advisers (not to exceed two), his/her defense attorneys, members of his/her family, and designated officers and employees of the BOP. Upon approval of the Director of the BOP, the Warden may grant access to such other proper persons as the inmate may request.

VI.  Period of Time Between Six to Three Days Prior to the Execution

A.  Witnesses

Non-media witness agreements should be signed by the witnesses and reviewed by the Regional Director.

1.  The Warden will provide a final list of witnesses to the:

13

        *a.*     Director, Bureau of Prisons

        b.     Assistant Director, Correctional Programs Division;

        c.     Assistant Director, Information, Policy, and Public Affairs Division;

        *d.*     Assistant Director, Office of General Counsel

        e.     Director, USMS; and

        f.     Designated United States Marshal

        g.     United States Attorney's Office – district of conviction

        h.     United States Attorney's Office- Southern District of Indiana

    2.     Persons who refuse to sign agreements will not be allowed to attend the execution.

B.    <u>Brief Affected Law Enforcement Agencies</u>

    The Warden will ensure that staff from other law enforcement agencies who have not participated in practice session or have not otherwise been briefed previously will be briefed and their responsibilities explained.

C.    <u>Inmate's Property and Accounts</u>

    Verify arrangements are complete.

D.    <u>Executioner(s)</u>

    An individual designated by the Warden will:

    1.     Review with executioner(s) and alternates arrangements for their transportation and escort to the Execution Facility; and

    2.     Review with participants' arrangements for security of executioner(s) and protection of their identities.

E.    <u>Equipment Check/Inventory</u>

    All equipment necessary to conduct the execution will be inventoried and checked at least 72 hours prior to the execution by individuals designated by the Regional Director.

VII.   <u>Period of Time Between Two Days to One Day Prior to the Execution</u>

B.   <u>Practices</u>

Final practices will be conducted as directed by the Regional Director.

C.   <u>Equipment Checks</u>

Maintenance staff should verify necessary installation of and test electrical, heating/air conditioning, backup generator and communications equipment in:

1.   BOP Execution Facility;

2.   Command Center.

D.   <u>Regional Director and/or Warden Contacts</u>

1.   To ensure that coordination efforts are in place, the following entities and specifically identified individuals will be contacted by the Regional Director and/or the Warden:

a.   Department of Justice Command Center (to ensure communications, if required, by the Attorney General, the Supreme Court, the President of the United States and the affected United States Attorneys Offices);

b.   BOP Director's Office;

c.   USMS Director's Office; and

d.   Affected law enforcement agencies.

E.   <u>Equipment Check Verification by the Regional Director</u>

1.   The Regional Director will ensure completion of pre-execution inventory and equipment check in the BOP Execution Facility.

2.   The Regional Director will verify that the Execution Facility's equipment checks have been completed.

CHAPTER 2:  EXECUTION CHECKLIST

I.      General Provisions

    A.      Purpose of Chapter

        1.      This chapter provides a checklist of procedures and events that should occur during the final 24 hours prior to the execution.

    B.      Procedure

        The execution will be carried out in a manner consistent with Title 28, Code of Federal Regulations, Part 26.

II.     Period of Time Within Twenty-Four Hours Prior to the Execution

    B.      Inmate Communication

        1.      Excluding calls to the inmate's attorney(s) of record and calls specifically approved by the Warden, the inmate's telephone privileges will be terminated 24 hours prior to the execution.

        2.      The inmate's attorney(s) of record, spiritual adviser(s), or other persons approved by the Director of the BOP, will be given visiting privileges during the final 24 hours as determined by the Warden. Visiting privileges will be suspended when preparations for the execution require suspension.

    C.      Food Service

        The Warden will contact the inmate to finalize arrangements for his/her final meal and ensure that it is properly prepared and served by staff.

    D.      Maintenance Response Team

        Beginning eight hours prior to an execution, the Facility Manager or other appropriate individual will ensure that a Maintenance Response Team is available to provide necessary maintenance and repair of systems at the Execution Facility or in other areas of the institution.

E.   Access to the Execution Facility

III.   Period of Time Between Twelve to Three Hours Prior to the Execution

A.   Final Briefing

2.   A final briefing will be held, attended by senior BOP and Marshals Service staff, the Regional Director, and representatives deemed appropriate by the Regional Director.  The Regional Director will conduct the meeting, with the senior staff providing guidance and policy decisions, as needed.

3.   During the briefing, participants will:

a.   Identify problems, develop solutions, and specific time lines;

b.   Provide status reports;

c.   Coordinate support services involvement; and

d.   Conduct a final review of procedures.

B.    Food Service

The inmate will be served a final meal at a time determined by the Warden.

C.    Visits

Visits by attorneys, religious representatives, and other persons approved by the Director of the BOP, will be at the discretion of the Warden.

D.    Restricting Access to Prison Property

1.    At the discretion of the Warden, during the final 12 hours prior to the execution, access to prison property will be limited to:

a.    On-duty staff;

b.    On-duty contract workers;

c.    Volunteers deemed necessary by the Warden;

d.    Approved delivery vehicles;

e.    Law enforcement personnel on business-related matters;

f.    Routine inmate visitors; and

g.    Other persons approved by the Warden.

2.    During the final eight hours:

a.    All off-duty Department of Justice personnel will be required to leave institution property;

E.     Establishment of Command Center



IV.     Period of Time Between Three Hours to Thirty Minutes Prior to the Execution

A.     Pre-Execution Procedures

1.     The Regional Director will ensure that all countdown procedures for required activities and actions are progressing.

2.     Immediate action to complete any unfinished required procedures will be initiated.

3.     The Warden will designate a recorder who will begin logging execution activities in the official execution log commencing three hours prior to the scheduled execution.  The log will reflect, at a minimum, the time each of the following events occurs:

a.     Inmate removed from Inmate Holding Cell;

b.     Inmate strapped to gurney;

c.     Arrival of government/community witnesses;

d.     Arrival of inmate's authorized witnesses;

e.     Arrival of media witnesses;

f.     Opening of drapes;

g.     Last statement by inmate;

h.     Reading of statement conveying inmate's sentence of death;

i.     Upon Designated United States Marshal's approval, the execution process begins;

j.     Signal by Executioner(s) that lethal substances have been administered;

k.     Determination of inmate's death by designated qualified person;

     l.    Announcement of death of inmate;

     m.    Closing of drapes;

     n.    Notification of outside media and demonstrators of inmate's death;

     o.    Removal and transportation of media witnesses to media center;

     p.    Removal of inmate's authorized witnesses;

     q.    Removal of government/community witnesses;

     r.    Restraint Team/Vigo County Coroner enter Execution Room to remove body;

     s.    Removal of body to Vigo County Coroner's vehicle;

     t.    Performance of any necessary cleaning chores;

     u.    Directive by Warden to secure Execution Facility.

B.    **Execution Room Staff Assemble**

    1.    The Executioner(s) will be escorted into the Execution Facility and will inventory supplies and ensure that everything is ready.

    3.    All other Execution Room staff will be assembled on-site for final instructions at least forty five minutes prior to the scheduled execution.

C.    **Contact with the Department of Justice Command Center**

V.      The Final Thirty Minutes Prior to the Execution

        A.      Final Sequence of Events: Preparation

                1.      Bringing the Inmate to the Execution Room

                        At the appropriate time, the inmate will be:

                        a.      Removed from the Inmate Holding Cell by the Restraint
                                Team;

                        b.      Strip-searched by the Restraint Team and then dressed
                                appropriately;

                        c.      Secured with restraints;

                        d.      Escorted to the Execution Room by the Restraint Team.

2.    <u>Restraint Team Procedures And Preparation</u>

       a.  In the Execution Room the ambulatory restraints will be removed and the inmate will be restrained to the Execution Table.

       b.  The inmate will then be assessed and prepared for execution by qualified medical personnel.

3.    <u>Admit Witnesses</u>

    a.    Subsequent to appropriate search procedures, witnesses will be admitted to the witness rooms.

    b.    The government/community witnesses will then enter and will be escorted to their assigned area.  The escorts will remain with the witnesses.

    c.    The authorized witnesses invited by the inmate individual will be admitted and escorted to their assigned area.

       1.    If any of the inmate's invited witnesses wish to be on-site, but not actually witness the execution, accommodations will be made for them by the Warden.

       2.    Escorts will remain with the inmate's witnesses. There will be a minimum of two escorts for each witness group.

    d.    The last witnesses to be admitted will be the news media representatives.  The members of the news media selected to witness the execution will be escorted to their assigned area.  Escorts will remain with the news media witnesses and ensure their separation from the other witnesses while at the Execution Facility.  Media witnesses will not be permitted to interview or question staff or other witnesses while at the Execution Facility.

VI.    Final Sequence of Events: Execution

A.    Staff Witnesses

1.    Staff participating in the preparation for the execution will exit the Execution Room but stand by in an adjacent area.

2.    Staff members participating in and/or observing the execution will include the:

a.    Designated United States Marshal;

b.    Senior BOP Official;

c.    Executioner(s);

d.    Other staff authorized by the Director of the BOP.

B.    Countdown

1.    Upon the direction of the Senior BOP Official, staff inside the Execution Room will open the drapes covering the windows of the witness rooms.

2.    The inmate will be asked if he/she has any last words or wishes to make a statement.  The inmate will have been advised in advance that this statement should be reasonably brief.

3.    At the conclusion of the remarks, or when a determination is made to proceed, the documentation deemed necessary to the execution process will be read.  Once the Designated United States Marshal makes a final determination that the execution is to proceed, the executioner(s) will be directed to administer the lethal injection.

4.    If the execution is ordered delayed the Designated United State Marshal will notify the Senior BOP Official who will in turn instruct the Executioner(s) to step away from the execution equipment and will notify the inmate and all present that the execution has been stayed or delayed.

C.    Determination of Death

1.    After the lethal injection has been administered:

a.    The inmate will be monitored until apparent signs of life have ceased;

24

          b.      The time of death will be announced prior to the drapes being closed.

2.      The Designated United States Marshal will complete and sign the Return described in 28 C.F.R. § 26.2(b) and will file such document with the sentencing court.

CHAPTER 3:          POST-EXECUTION CHECKLIST

I.      General Provisions

    A.      Purposes of Chapter

        The purpose of this chapter is to:

        1.      Provide the procedures to be followed after the execution of the inmate;

        2.      Identify the responsibilities for tasks to be completed; and

        3.      Provide for the transfer of the body of the inmate from the custody of the BOP.

    B.      Procedure

        It is the procedure of the BOP that:

        1.      The inmate will be examined by a specified qualified person following the administration of the lethal substances to ensure that death has occurred;

        2.      When the qualified individual is satisfied that death has occurred, the time of death will be announced to the witnesses;

        3.      The witnesses to the execution will then be removed from the Execution Facility and returned to their individual staging areas so that they may leave the institution.  News media witnesses will be removed to a secondary press location where they will participate in a press briefing;

        4.      The body of the inmate will be surrendered to the Vigo County Coroner;

        5.      After removal of the body, the site will be cleaned and restored to its previous condition.

II.     Removing Witnesses from the Execution Facility

    A.      After the pronouncement of death, the witnesses will be escorted from the facility in the following order:

        1.      News media witnesses;

        2.      Inmate's authorized witnesses; and

3.      Government/community witnesses.

B.      Each group of witnesses will be kept separate from the others and escorted to waiting vehicles to be driven to separate designated sites.

III.    <u>Removal of the Body of the Inmate</u>

A.      After the witnesses have departed, the restraints will be removed from the inmate's body.

B.      The Vigo County Coroner or designee will be escorted into the Execution Facility.  The body will be removed by the Vigo County Coroner, who will place it in a coroner's vehicle for transportation.

IV.     <u>Site Clean-Up</u>

A.      Under the supervision of an individual designated by the Warden, staff will clean and secure the Execution Facility.

B.      The Execution Facility will be locked and secured when the Warden is satisfied that clean-up has been completed.

V.      <u>Returning to Routine Operations</u>

A.      Following the execution, Department of Justice and BOP staff involved in the execution will be deactivated, as appropriate, under direction of the DOJ, BOP and USMS staff on-site.

B.      The designated public affairs representative will determine when to secure the media assembly site after the news conference is complete.

C.      The Warden will bring the institution security back to routine operations as he/she sees fit.

CHAPTER 4:          Command Center

I.     General Provisions

    A.     Purpose of Chapter

        The purpose of this chapter is to:

        1.     Identify the role and function of the Command Center;

        2.     Specify the individuals authorized to staff the Command Center;
        and

        3.     Provide an inventory of the minimum resources required in the
        Command Center.

    B.     Procedure

        It is the procedure of the BOP that:

        1.     The Bureau operate a local, emergency Command Center during
        the execution operation to:

            a.     Coordinate security, transportation, crowd control, access
            and other processes;

            b.     Provide policy and procedural advice, as needed, or upon
            request;

            c.     Coordinate inter-agency functions; and

            d.     Serve as an information processing and operations
            information center for the execution.

II.    Location, Role and Function

    A.     The Command Center will be operational prior to the scheduled execution
    and maintained for the duration of the execution operation.

    B.     The roles and functions of the Command Center include:

        1.     Coordinating the various personnel, components and elements of
        the execution operation;

III.   Command Center Staffing

   A.   Command Center staff should include the following positions:

   B.   Access to the Command Center will be limited to persons specifically authorized by the Command Center Director or Warden.



CHAPTER 5: CONTINGENCY PLANNING

I.      General Provisions

        A.      Purpose of Chapter

                The purpose of this chapter is to:

                1.      Aid in the development of a predetermined contingency plan to assist staff in the management of the execution event and in responding to related emergency situations;

                2.      Identify the role and function of staff needed to formulate and activate the plan, if needed; and

                3.      Identify specific areas to stage staff and equipment.  The location of witness processing will be pre-determined by the Warden on a case-by-case basis.

        B.      Procedure

                It is the procedure of the BOP to:

                1.      Prepare and test contingency plans;

2.    Identify all security measures needed to protect staff and inmates of an institution as well as BOP property; and

3.    Coordinate all resources to ensure the safety of the public, staff, and inmates.

II.    Specific Procedures

A.    An individual identified by the Warden will prepare contingency plans related to an emergency occasioned by the execution, such as an institution disturbance, hostage taking, outside demonstration, outside assault on the facility, etc.  All plans will be reviewed and approved by the Warden and the Regional Director.

B.    Plans will include provisions for:

C.    Intelligence Operations

D.    <u>Staging Areas</u>

E.    <u>Tactical Deployment</u>

III.    <u>Execution Witness Management</u>



4. While all witnesses to the execution are subject to search, no pat or visual search of any witness will be conducted unless the Warden has reasonable suspicion to believe the witness is concealing weapons, drugs, audio or visual recording devices, or any other item not expressly authorized and the witness agrees to be searched. If the witness refuses to be searched, he/she will not be permitted to serve as a witness.

5. Staff at each staging area will notify the Command Center when all execution witnesses are accounted for and processed.

6. Escorts will remain at their assigned staging areas until the Command Center directs them to transport the witnesses to the Execution Facility.

B. <u>Transportation to the Execution Facility</u>



3.   Escorts will ensure that witness groups do not come into contact with each other.

4.   Escorts will transport witnesses to the Execution Facility and notify the Command Center when each group of witnesses is secured in the assigned observation area.

5.   Once each group is secured, the next group will be moved as directed by the Command Center.

6.   The Command Center will be notified by the appropriate staff member when all groups are in place.

7.   The Command Center, in turn, will notify the Warden or designee.

C.   <u>Transportation from the Facility</u>

2.   The groups will be returned to the staging areas by the escorts, who will ensure that no group comes in contact with another group.

3.   Escorts will notify the Command Center as each group returns to the staging area.

4.      The Command Center will direct each move to expedite departures and also to prevent groups from encountering one another in the parking lot.

5.      Media witnesses will be returned to the Media Center to have a press pool briefing as outlined in Chapter 6.

IV.   <u>Reservation Security Plan</u>

3.  BOP staff will be available and will accompany execution witnesses.

CHAPTER 6:  NEWS MEDIA PROCEDURES

I.     General Provisions

       A. Purpose of Chapter

          This chapter describes the procedures and requirement for allowing
          representatives of the news media access to an inmate sentenced to death,
          as well as procedures for news media access to the execution.  This chapter
          also provides procedures for releasing information relating to the execution.

       B. Procedure

          The BOP recognizes the desirability of establishing procedures which afford
          the public information about its operations through the news media. In
          accordance with established policy, reasonable efforts will be made to
          accommodate representatives of the news media before, during, and after a
          scheduled execution.  Media representatives will be treated in a fair and
          consistent manner in accordance with current policies and procedures of the
          BOP.  The agency has the responsibility, however, to ensure the orderly and
          safe operation of its institutions, and therefore must regulate media access.

       C. Roles

          1. Representatives of the news media are those individuals described in
             Program Statement 1480.0*5*, News Media Contacts, whose principal
             employment is to gather and report news.

          2. The Regional Director will designate a specific staff member as the official
             representative to the news media regarding death penalty issues and the
             scheduled execution.

          3. The BOP Assistant Director, Information, Policy and Public Affairs
             Division, will coordinate the release of information to the news media and
             assist the Regional Director in the selection of individual news media
             witnesses.  The Department of Justice Office of Public Affairs will be kept
             informed of these matters.

II.   Inmate Interviews

A.   Purpose

As stated in Program Statement 1480.05, News Media Contacts, it is not the BOP's intent to provide publicity for an inmate or special privileges for the news media, but rather to ensure a better informed public.

B.   Limits

With this in mind, representatives of the news media may be permitted to conduct interviews with inmates.  Guidelines regarding the frequency and length of interviews, as well as accompanying security, will reflect BOP/institution policy and will be established by the Warden, who will take into account the available resources.

C.   Prohibition

Ordinarily, no media interviews will be permitted with the inmate once the execution date is within seven days.

III.   Media Orientation

A.   Definition

Ordinarily one day before a confirmed execution date, the institution will hold a Media Orientation to provide media representatives with information on the scheduled execution.  No other press conference or Media Orientation regarding the execution will be scheduled or held until after the scheduled execution, except as provided below in subsection B.  Every effort will be made by the Warden's representative to notify local, state and national media representatives of the scheduled Media Orientation.  Central Office Public Affairs staff will provide assistance in this area.

1.  All persons, including media representatives, must have appropriate identification to enter the institution on any occasion. Media representatives must have appropriate press credentials.  This requirement includes camerapersons, sound technicians, and reporters.

2.  All individuals will be advised that they are subject to search of their person and equipment prior to entering and prior to leaving a BOP facility.

B.   Updates Prior to the Execution

Following activation of the Media Center, the Warden's representative will provide the news media with regular briefings or updates of the execution process.

38

1. No later than eight hours prior to the scheduled execution, a Media Center will be activated.  Telephone lines, tables, risers for cameras and outlets for electrical equipment and cameras will be available.  Restroom facilities will also be provided.

2. A BOP representative will be present in the Media Center to provide regular announcements.

C. Media Orientation Releases

During the Media Orientation, the following information will be made available to members of the media:

1. General information regarding the scheduled execution and about the individual scheduled for execution.

2. Specific information regarding procedures to be followed by the media on the date of the scheduled execution.

3. Media representatives will be reminded that there are obvious security concerns about aircraft flying over federal correctional facilities and therefore, their assistance and cooperation in this matter is expected.

4. Media representatives will be informed of how the press pool will be established (see paragraph IV D 2) and advised that if they are selected as press pool witnesses to the execution, they will agree prior to the execution to:

   a. Sign the document designated as the Media Witness Press Pool Agreement (see Media Witness Press Pool Agreement, Appendix B);

   b. Be subject to search which includes metal detection scanning;

   c. Not make any photographic, visual or audio recordings of the execution (each media witness will be provided only paper and a pencil or pen while in the execution witness area); and

   d. Return to the Media Center after the execution to answer questions of all other media represented concerning their observations during the execution.

5. After the BOP representative, media pool witnesses and appropriate Department of Justice staff, if available, have addressed the media in the Media Center, the press briefing will be terminated and all media personnel will leave the Media Center.

39

IV.    Media Center Operations

A.    Requesting Authorization

1.    After an execution date is set by the Court/Director of the BOP, and no sooner than twenty days prior to the scheduled execution, news media representatives will be advised, in writing, by the BOP's representative that they may request, in writing, authorization to participate in the institution's Media Center activity in the hours preceding the scheduled execution (see Sample Letter to Media, Appendix C).

The request, which must be in writing, should be received by the Warden no later than ten days prior to the execution.  Requests must include names, social security numbers, and dates of birth for each representative of a media organization and his/her support staff.  Only those media organizations submitting written requests, within the stated time frame, will be considered for participation in Media Center activities.

2.    Requests for consideration may be granted by the Warden, provided they demonstrate that the requesting individual falls within the definition of "member of the press and broadcast media" set forth in BOP Program Statement 1480.05, News Media Contacts.

B.    Possible Limitations

The number of media representatives may be limited by the Regional Director due to space and safety considerations, but care will be taken to include representatives from both the print and broadcast media.

C.    Briefing Packets and Updates

1.    Packets

Following activation of the Media Center, the Warden's representative will provide press briefing packets for reporters in the Media Center.  The contents of the press briefing packet will include, but not limited to, releasable information on the inmate, pool reporters (once selected), the sequence of events, and the history of federal executions.

2.    Updates

Written updates generally will be distributed to the press on a regular basis following activation of the Media Center. Updates will include:

a.   A summary of activities related to the execution and sequence of events; and

b.   A summary, cleared by the Warden, of the inmate's activities during his/her final twenty-four hours.

D.   <u>News Media Witness Selection</u>

1.   <u>Number in Attendance</u>
The Warden will permit no more than 10 members of the media to witness the execution.  The number of additional media representatives authorized to remain in the Media Center of the day of the execution may be limited due to space and safety concerns.

2.   <u>Pool Selection Process</u>

a.   Press pool members will be selected by their peers at least three hours prior to the scheduled execution. Representatives from each of the following categories must be included:

(1)   One local media source (located within the city or town of the institution);

(2)   Three television news programs of a station or network holding an FCC license (at least two being national broadcast stations);

(3)   Two media sources from the area where the crime was committed;

(4)   One wire service;

(5)   One radio station; and

(6)   Two print media organizations.

b.   Press pool witnesses will be selected from qualified media representatives who have been admitted into the institution's Media Center and who have provided staff with proper identification.  A list of media representatives will be compiled by the BOP's representative and furnished to the media for their review in the selection process.

3.   <u>Signed Agreement</u>

Media selected as press pool witnesses will then be required to agree to:

41

a.  Act as a pool representative as described further in this chapter; and

b.  Abide by all established conditions, rules, and regulations while in attendance at the execution; to include allowing a metal detector scan of their person.

4.  Supplemental Representatives

In the event the media are unable to identify witnesses in each of the above described categories, the BOP's designated representative may name other qualifying media representatives to attend, with a maximum of 10 being named.

E.  Media Witnesses to the Execution

1.  Search Process

Each media pool witness attending the execution will be scanned by a metal detector prior to admittance to the Execution Facility.

a.  While all witnesses to the execution may be subject to search, no pat or visual search of any media pool witness will be conducted unless the Warden has reasonable suspicion to believe the media representative is concealing weapons, drugs, audio or visual recording devices, or any other items not expressly authorized and the media representative agrees to be searched.  If the representative refuses to be searched, he/she will not be permitted to serve as a media witness.

1.  Electronic or mechanical recording devices include, but are not limited to, still, moving picture or video tape cameras, tape recorders or similar devices, and radio/television broadcasting devices.

2.  The representative will only be permitted paper and a pencil or pen as provided by institution staff.

2.  Witness Briefing

The 10 selected members of the news media will be required to sign both the witness agreement (Appendix A) and the Media Witness Press Pool Agreement (Appendix B).  They must also attend the pre-execution briefing at the Media Center.  This briefing, conducted by a representative of the Warden, will provide specific information on the event and expectations regarding their conduct. This will include:

a.  Review of approved materials that can be taken to the

Execution Room;

b.      Search procedures;

c.      Escort procedures; and

d.      The role of pool reporters.

3.      <u>Prohibition of Substitutes</u>

No substitute media pool witness will be permitted after this briefing is conducted.

4.      <u>Segregation after the Search</u>

After clearing the metal detector, all witnesses will be segregated and escorted to the Execution Facility.  Media witnesses will not be permitted to have physical contact with any other persons during this time.

5.      <u>Excluding Witnesses</u>

The Warden will not exclude any media witness duly selected in accordance with this chapter from attendance at the execution or cause a selected media witness to be removed from the media pool witness area unless the media witness:

a.      Refuses to submit to a reasonable search as outlined in these regulations;

b.      Faints, becomes ill, or requests to be allowed to leave during the execution;

c.      Causes a disturbance within the media pool witness area that disrupts the orderly progress of the execution as determined by the Warden's representative on site; or

d.      Fails to abide by the provisions of the Witness Agreement.

6.      <u>The Execution Process</u>

The selected media pool witnesses will be escorted as a group to the execution location prior to the execution. A designated BOP Spokesperson will remain with the media pool witnesses throughout the process.

F.      <u>Death Announcement</u>

Immediately following the execution and prior to the post-execution press pool briefing, a BOP representative will read the following prepared statement to the press and demonstrators:

SAMPLE STATEMENT

(To be read at post execution press briefing and to any assembled members of the public.)

_____, Warden of _____,

reports that pursuant to the sentence of the United States District Court in

_____, _____
(Inmate's Name)

has been executed by lethal injection.

_____ was pronounced dead at
(Inmate's Name)

_____ on _____.
(Time)                              (Date)

G.    Press Pool Post-Execution Briefing

All news media press pool witnesses will, after being returned from the execution to the Media Center, immediately brief other media representatives covering the event. The pool witnesses will provide an account of the execution and will endeavor to answer all questions asked of them by other media representatives. They will not report their observations regarding the execution to their respective news organizations until after the non-witness media representatives have had the benefit of the pool representatives' accounts of the execution.

H.    Post Execution Press Conference

If deemed necessary and appropriate, representatives of the Department of Justice, USMS, and BOP will answer questions from the assembled media for no more than 30 minutes after the press briefing.

V.   The Execution Information Center

A.   Responsibility

The BOP's representative will establish and operate an Execution Information Center.

B.   Purpose

The Execution Information Center:

1.   Is a central processing point for all incoming media and public interest telephone calls pertaining to the scheduled execution;

2.   Allows the institution's staff to handle normal and routine business;

3.   Handles "crank" calls and bomb threats in accordance with BOP policy; and

4.   Establishes a log of calls for future reference, investigation and evaluation.

C.   Location

1.   The Execution Information Center will be located in an area identified by the Warden.

2.   Only persons authorized by the Regional Director and/or Warden will be allowed in the Center's operational area.  Center staff are responsible for keeping the area clear of unauthorized personnel.

D.   Schedule

1.   The Execution Information Center will commence operations approximately two working days prior to the scheduled execution. The Information Center will operate twelve hours a day on the days prior to the scheduled execution and for the eighteen hours immediately preceding the scheduled execution.  The Center will remain in operation until approximately one hour after the execution.

2.   The BOP's representative will arrange coverage of telephones, based on the volume of calls.

3.    Staff for the Execution Information Center will be coordinated by the BOP's representative.

E.    <u>Screening Calls</u>

    1.    <u>Types of Calls</u>

        a.    Business Calls

              Calls from BOP staff or other Federal agencies relating to the execution; or from BOP staff relating to operational issues affected by the execution which may need to be forwarded to the Command Center.

        b.    Personal Calls

              Calls intended for individuals (staff or witnesses) connected with the execution.

        c.    Inquiry Calls

              Execution-related calls from the general public.

            1.    Staff will endeavor to answer every call in a professional, courteous and efficient manner.

            2.    If bomb threats are received, the staff member receiving the call will utilize established procedures. Bomb threats will be communicated to the Command Center immediately.

            3.    If possible, all "crank" calls and calls considered to be an emergency, should be recorded and traced.

CHAPTER 7:  STAYS, COMMUTATIONS AND OTHER DELAYS

I.      General Provisions

        A.      Purpose of Chapter

                The purpose of this chapter is to:

                1.      Cite the entities capable of causing execution stays, commutations, and other delays;

                2.      Specify the manner of communicating such delays/commutations; and

                3.      Provide the procedures for implementing the delay/commutation.

        B.      Procedure

                It is the procedure of the BOP that:

                1.      Processes must be in place to receive and ensure proper handling of legal interruptions of the execution countdown;

                2.      Staff understand their roles and the BOP's responsibilities in the event of such interruptions; and

                3.      Contingency plans provide methods for responding to:

                        a.      Temporary delays;

                        b.      Lengthy delays; and

                        c.      Commutations.

II.     Presidential and Judicial Authority to Interrupt Execution

        A.      President

                1.      The United States Constitution confers upon the President the power to grant reprieves and pardons for offenses against the United States.  This has been held to include the power to grant conditional pardons and commute sentences.

2.      Neither Congress nor a State legislature can limit the President's power to pardon.

B.      Courts

A federal court of competent jurisdiction may issue a stay of execution or invalidate a sentence of death as a result of appellate or collateral proceedings.

III.    Communication of Pardons, Stays, Commutations or Delays

A.      Prior to Final Execution Countdown

If the BOP receives an order from a federal court of competent jurisdiction or the President ordering a respite, reprieve, stay, commutation, pardon or other action which requires the suspension or termination of the execution:

1.      The Attorney General's Office will be contacted for consultation; and

2.      A decision will be made by the Director of the BOP concerning the status of planning and preparation for the execution.

B.      During Final Execution Countdown

1.      During the final twenty-four hours, the BOP and the USMS will maintain frequent contact with the Attorney General's Office

C.      Final Clearance for Execution

At an appropriate time prior to the execution                    the Designated United States Marshal will verify clearance to continue with the execution

48

IV.     Procedures to Implement Last-Minute Stays

A.      Upon receiving a stay during the final countdown, the first effort will be to determine the probable length of the delay.

B.      If the witnesses have not been moved from their staging areas, they will be held in those locations until further instructions are received from the Senior BOP staff to proceed with or terminate the execution.

C.      If witnesses are already at the Execution Facility and the inmate is restrained:

   1.     If the delay appears to be relatively lengthy, the inmate will be returned to the Holding Cell by the Restraint Team.  The witnesses will be returned to their staging areas in the order listed.  There they will await further information.

   2.     If the delay is likely to be relatively short in duration, the witnesses will remain in place.  The drapes will be closed and the inmate will remain restrained on the table.

   3.     If the execution is indefinitely stayed, set for re-sentencing, commuted, or halted by pardon, the execution will be halted, and the inmate and witnesses will be immediately advised.  Witnesses will be returned to their staging areas and the inmate returned to appropriate quarters in the institution.

Appendix A

MEMORANDUM OF AGREEMENT
BETWEEN
FEDERAL BUREAU OF PRISONS
AND WITNESS


This agreement is made between the Federal Bureau of Prisons and the following witness:

_____

In accordance with Title 28, Code of Federal Regulations, Section 26.4, the Federal Bureau of Prisons may allow you, as a witness, to be present at the execution. However, your presence at the execution is not a right and, in order to be entitled to be present, you will be required to agree to the following conditions:

1.    You will not bring onto institution grounds anything constituting legal or illegal contraband under applicable statute, regulation or policy, including, but not limited to, firearms, weapons, explosives, metal cutting tools, narcotic drugs, alcoholic beverages, or any item creating a threat to institution safety, security, or good order;

2.    You agree to submit to a reasonable search for contraband and other searches as considered necessary by the Bureau of Prisons for entry into the institution;

3.    You will conduct yourself in a lawful and orderly manner;

4.    You will comply with all lawful directives of correctional personnel while on institution grounds;

5.    You will not bring onto institution grounds any photographic or other visual or audio recording device, to include cellular devices; and

You have read, understand, and agree to the above.  By signing this agreement, you agree to comply with its conditions and understand that failure to abide by them will result in your removal from institution grounds and could lead to prosecution for violation of Federal laws.


_____    _____
            (Witness)                                                (Date)


_____    _____
        (Agency Representative)                                      (Date)

50

Appendix B

MEDIA WITNESS PRESS POOL AGREEMENT


In consideration of having been selected as an official witness to the execution of

_____ on _____,

I, _____,

hereby agree to act as a pool reporter and, not to interview non-media witnesses or

Department of Justice staff at the Execution Facility.  Following the execution, I agree to

return immediately to the Media Center to brief my colleagues there regarding the

execution and answer their questions.  I also agree to file my story only after I have

completed my responsibilities as a pool reporter.


NAME:                    _____
                                                    (Signature)

ORGANIZATION:    _____


DATE:                    _____


                                        _____
                                                (BOP Staff Witness)




Appendix C

51

SAMPLE LETTER TO MEDIA
(Re:  Media Center Operations)

In accordance with the provisions of 28 C.F.R., Part 26, Implementation of Death
Sentences in Federal Cases,

_____ is scheduled to be executed
     (Inmate's Name)

at _____ on _____.
          (Institution)                          (Date)

No later than eight hours preceding the scheduled execution, a Media Center will be
established at the _____ in  Terre Haute, Indiana,
                              (Location)
and telephones will be available.  Should you desire to cover the event from the Media
Center, or if selected, be a media pool witness, please submit your written request to
me, via fax or by mail, so that it is received in my office no later than

_____.
     (Date 10 days prior to execution)

The request must include your name, the names of all support staff (sound technician,
cameraperson, etc.)  who may accompany you on this day.  Social security numbers
and date of birth for all participants, including yourself, must also be furnished in your
letter so that appropriate security checks can be completed.  You will be notified
promptly if we have any concerns with your request.  Space is limited and admittance to
the Media Center will have to be on a first-come, first-accommodated basis.

Should you desire to be considered to be a media pool witness to the execution, you will
also be required to sign agreements consenting to a search prior to entering the
execution facility, and agreeing to abide by all relevant conditions, rules and regulations.
Should you participate, your name is subject to being released to the media.

Please note that all media representatives will be required to sign a log and show
proper press credentials in order to be admitted to the Media Center.

                              Sincerely,
                              Name
                              Title

# Exhibit A-2



**U.S. Department of Justice**
Federal Bureau of Prisons
*Federal Correctional Complex*

Office of the Complex Warden

*4700 Bureau Road South*
*Terre Haute, Indiana 47802*

July 6, 2020

AMENDED MEMORANDUM FOR WESLEY PURKEY
FEDERAL REGISTER NO. 14679-045

FROM:       T.J. WATSON, COMPLEX WARDEN

SUBJECT:    Spiritual Advisor

You were sentenced to death in 2003. Nearly one year ago, in July 2019, your execution was scheduled for December 13, 2019. As you are aware, preparations to conduct that execution continued until the evening of December 6, 2019. At no point during that lengthy period did you submit a Form A "Requested Witnesses" requesting the presence of a spiritual adviser in the execution room at your execution.

On June 15, 2020, your execution was rescheduled for July 15, 2020. On June 26, 2020, you sent a "copout" to your Case Manager asking for the policy which prohibits your Minister of Record from being allowed inside the execution room during your execution. You then followed that with the submission of a Form A "Requested Witnesses" on June 29, 2020, asking that Dale "Seigen" Hartkemeyer, a Buddhist priest, be permitted to provide pastoral care before, during, and after your execution. Although this request is profoundly untimely given your extensive delay, the Federal Bureau of Prisons (BOP) has carefully considered it and determined that it will be granted.

Federal regulations provide that an inmate may have access to a spiritual adviser in the days leading up to an execution, 28 C.F.R. § 26.4(b), and we have approved your access to Rev. Hartkemeyer during that time. In addition, on the day of your execution, Rev. Hartkemeyer will be permitted to provide spiritual services to you during your time in the execution facility. After you are transferred to the execution room, he will be escorted into the room for a brief non-contact visit with you in the presence of an assigned BOP staff member, which will provide an opportunity to engage in final prayers or other end-of-life spiritual rites. He will be permitted to remain in the execution room with the assigned BOP staff member during the execution procedure. Any disruptive physical or verbal behavior will result in his immediate removal from the room for the remainder of the procedure. Should any of the confidential staff need to enter the room during the procedure, he will be escorted out of the room while the confidential staff are present. Upon completion of the execution, he will be given brief access to your body to say additional prayers or perform appropriate spiritual rites if you so choose. We will be in contact with Rev. Hartkemeyer in advance of the execution to further discuss logistical details and answer any questions.

I trust this is responsive to your request.

cc:   Michelle Law
       Rebecca Woodman