UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| | ) | |
| DANIEL LEWIS LEE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:20-cv-00357-JRS-DLP |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM P. BARR, in his official | ) | |
| capacity as the Attorney General of the | ) | |
| United States; MICHAEL CARVAJAL, in | ) | |
| his official capacity as the Director of the | ) | |
| Federal Bureau of Prisons; and T.J. | ) | |
| WATSON, in his official capacity as | ) | |
| Complex Warden for Terre Haute Federal | ) | |
| Correctional Complex, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFF LEE'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Daniel Lewis Lee files this new lawsuit and motion for a preliminary injunction at the eleventh hour, challenging the setting of his execution date during the COVID-19 pandemic as arbitrary and capricious, an abuse of discretion, and not in accordance with law, in violation of the Administrative Procedure Act ("APA"), because the schedule allegedly hampers his access to counsel. He is set to be executed tomorrow at 4:00 pm, July 13, 2020. Although Judge Magnus-Stinson previously entered a preliminary injunction on July 10, 2020, staying Lee's execution, at the behest of three family members' of Lee's victims who contend that attending the execution would expose them to an unnecessary risk of contracting COVID-19, *see Peterson et al. v. Barr et al.*, No. 2:20-cv-00350-JMS-DLP, ECF No. 20 (July 10, 2020) ("Peterson Order"), the Seventh Circuit has since vacated that preliminary injunction. *See* attached opinion. Lee's APA claim mirrors the APA claim raised by the *Peterson* plaintiffs. But the Seventh Circuit has now held that

the *Peterson* plaintiffs' APA challenge to the Federal Bureau of Prison's scheduling of the execution date "lacks any arguable legal basis and is therefore frivolous."  Order (attached) at 4.  In particular, the Seventh Circuit held that "the challenged agency action—setting a date for execution—may not be judicially reviewable *at all*" under the APA, *id.*, because as long as "BOP observes the minimal requirements in the regulations—as it did here—then it has the unconstrained discretion to choose a date for the execution," *id.* at 6.  The Seventh Circuit further held that the claims in *Peterson* were frivolous because the plaintiffs there "have no statutory or regulatory right to attend the execution," and that the applicable regulation listing permissible attendees "is a limitation on, not an entitlement to, witness attendance."  *Id.* at 6, 8.  Given this binding Circuit precedent, Lee has no likelihood of success on his materially identical APA challenge, and the motion for preliminary injunction should be denied.

Although this Court need not proceed further, Lee's motion also is untimely and is a blatant attempt at forum shopping.  Indeed, as he admits, he has raised similar arguments—albeit under the Constitution—in his "still-pending lethal injection litigation."  Motion for Prelim. Injunction at 11 ("Mot.") (citing Plaintiffs' Motion for Prelim. Injunction, *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-00145-TSC, Doc. 102, p. 45-50 (D. D.C. June 19, 2020)).  He has similarly raised his COVID-19 related concerns in a motion asking the sentencing court in the Eastern District of Arkansas to change the execution date as an exercise of its discretion; according to Lee, his argument in this litigation "was the centerpiece of a motion he filed in the Eastern District of Arkansas."  *Id.* But that motion was denied on July 10, 2020, *see Lee v. Barr*, Case 4:97-cr-00243-LPR, Doc. # 1425, at 10 (E.D. Ark. July 10, 2020).  Indeed, the district court judge in Arkansas found that "[w]hether the need for finality outweighs the mitigated but real Covid-19 related concerns is a judgment I prefer to leave to the elected branches of government.  Congress has not suspended executions during this crisis.  The Executive Branch believes it is worth moving ahead.  I am not in good conscience going to substitute my weighing of the advantages and disadvantages for theirs—especially when a delay would have to be a long one to do any good."  *Lee v. Barr*, 4:97-cr-00243,  Order at 10, ECF No. 1425.  Lee's attempt to

2

forum-shop and the fact that his motion is also woefully untimely are additional reasons to deny the preliminary injunction. *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1133-1134 (2019) (recognizing that "[l]ast-minute stays" of executions should be an "extreme exception" in light of the public's "'important interest in the timely enforcement of a'" capital sentence) (citation omitted).

That the balance of equities strongly tips against a stay is evident. The Supreme Court has repeatedly emphasized the important public interest in the timely implementation of capital sentences. Lee was convicted and sentenced to death for the "exceptionally heinous" crime of murdering all three members of an Arkansas family, including an eight-year-old girl, by shooting them with a stun gun, duct-taping plastic bags over their heads, weighing their bodies down with rocks, and drowning them in a bayou. *See Barr v. Roane*, 140 S. Ct. 353, 353 (2019) (statement of Alito, J.). Lee's conviction and sentence were affirmed on appeal, and his motions for post-conviction relief have been rejected, culminating in multiple denials of certiorari by the Supreme Court. Lee's frivolous APA claim simply does not outweigh the public interest in finally carrying out the lawfully imposed sentence in this case, particularly given the lengthy delay that has already occurred and the brutality of Lee's crimes.

## **BACKGROUND**

In 1999, Lee was convicted by a jury of his peers of conspiring to violate and violating the Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. § 1962(c) and (d), and of three murders in aid of racketeering in violation of 18 U.S.C. § 1959. *United States v. Lee*, 374 F.3d 637, 641 (8th Cir. 2004). Lee was a member of a white supremacist organization formed by co-defendant Chevie Kehoe and, in pursuit of the organization's criminal goals, he and Kehoe robbed and then murdered all three members of an Arkansas family, including an eight-year old child. Lee and his co-defendant shot their victims, placed plastic bags over the victims' heads, sealed the bags with tape, and then threw the bodies laden down with rocks into the Illinois bayou. *Id*. at 641–42. The same jury that convicted Lee returned a death verdict against him on May 14, 1999. *Id*. at 643.

3

Lee's conviction was affirmed on appeal, *id.* at 641, and his petition for certiorari was denied, 545 U.S. 1141 (2005). He then unsuccessfully sought post-conviction relief pursuant to 28 U.S.C. § 2255. *See United States v. Lee*, No. 4:97-CR-00243-(2), 2008 WL 4079315, at *1 (E.D. Ark. Aug. 28, 2008), *aff'd*, 715 F.3d 215 (8th Cir. 2013), *rehearing denied*, 811 F.3d 272 (8th Cir. 2015), *cert. denied*, 135 S. Ct. 72 (2014). He also unsuccessfully moved to reopen the § 2255 proceeding pursuant to Fed. R. Civ. P. 60(b) and exhausted all appeals as to that motion. *See United States v. Lee*, No. 4:97CR00243-02, 2014 WL 1093197, at *1 (E.D. Ark. Mar. 18, 2014), *aff'd*, 792 F.3d 1021 (8th Cir. 2015), *rehearing denied*, 811 F.3d 272 (8th Cir. 2015), *cert denied*, 137 S. Ct. 1577 (2017).

In 2011, while Lee litigated his post-conviction remedies, DOJ announced that BOP did not have the drugs necessary to implement its lethal injection protocol, which at the time called for the use of three drugs. In separate litigation challenging that protocol, BOP also disclosed that it had decided to modify its lethal injection protocol as a result of the drug scarcity. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 12-CV-0782, 2019 WL 6691814, at *2 (D.D.C. Nov. 20, 2019), *vacated by*, 955 F.3d 106 (D.C. Cir. 2020) [hereinafter "*Execution Protocol Cases*"]. In fact, the scarcity of lethal injection drugs as a result of public pressure by anti-death penalty advocates was a widespread problem for the next several years. *See generally Glossip v. Gross*, 135 S. Ct. 2726, 2733-34 (2015) (recounting the history of the problem); *cf. Gray v. McAuliffe*, No. 3:16CV982, 2017 WL 102970, at *7 (E.D. Va. Jan. 10, 2017) ("In light of the pressure waged by death penalty opponents, it has become increasingly difficult to obtain the drugs Virginia traditionally used to render a prisoner unconscious during the initial stage of the execution process."). Meanwhile, BOP engaged in an "extensive study" of its options: it "explored the possible use of other lethal substances[,] . . . visited state execution sites and evaluated their protocols[,] . . . consulted with medical experts, reviewed assessments of difficult executions, and studied relevant judicial decisions." *Execution Protocol Cases*, 955 F.3d at 110 (per curiam). It also considered "three-drug protocols using . . . barbiturates, three-drug protocols using weaker sedatives, and one-drug protocols." *Id.*

4

On July 25, 2019, at the direction of the Attorney General, BOP adopted a revised addendum to its lethal injection protocol that replaced the three-drug procedure with the use of a single drug, pentobarbital sodium, as the lethal agent. *Id*. In announcing this change, DOJ also established execution dates for five condemned federal inmates, including Lee. *Id*. at 111. Lee's execution was set for December 9, 2019.[1] Lee filed suit challenging BOP's single-drug protocol and on November 20, 2019, succeeded in obtaining a preliminary injunction staying his execution. *Id*. On April 7, 2020, the D.C. Circuit vacated the district court's injunction, *id*. at 108, but the mandate did not issue until June 12, 2020. On June 15, 2020, the Attorney General directed BOP to schedule the executions of four federal death-row inmates, including Lee. Lee's execution date was set for July 13, 2020.[2]

On June 19, 2020, Lee joined three other condemned inmates in filing a motion for a preliminary injunction, contending, *inter alia*, that the BOP's Execution Protocol denied him his constitutional right to access to counsel in light of the COVID-19 pandemic. *See In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C.), ECF No. 102 at 35-38. Lee did not explain what it was about the Protocol that denied him his purported constitutional right to access, but did argue that "the current COVID-19 pandemic alone is creating a deprivation of access to counsel that will result in irreparable harm." *Id*. at 40. Briefing on that motion is complete, the motion is pending decision.

On July 2, 2020, Lee filed two motions in the Eastern District of Arkansas as an extension of his criminal case in which he sought an order from that court declaring that the execution date set by the Federal Bureau of Prisons ("BOP"), July 13, 2020, was "null and void." *United States v. Lee*, No 4:97-CR-00243-LPR (E.D. Ark.), Dkt. 1400, at 1, 8-9, and in which he sought an order

---

[1] *See* Press Release, Dep't of Justice, "Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse" (July 25, 2019), https://www.justice.gov/opa/pr/federal-governmentresume-capital-punishment-after-nearly-two-decade-lapse.

[2] *See* Press Release, Dep't of Justice, "Executions Scheduled for Four Federal Inmates Convicted of Murdering Children" (June 15, 2020), https://www.justice.gov/opa/pr/executions-scheduled-four-federal-inmates-convicted-murdering-children.

from that Court postponing his execution until March 19, 2021. *Id*. at Dkt. 1401, at 4 n.5, 10-31. On July 10, 2020, the district court in that case rejected Lee's argument. The court noted that "Mr. Lee . . . asks that I consider entering an Order for a different execution day, much further in the future . . . for numerous reasons, including (1) the Covid-19 crisis and its effect on a plethora of issues surrounding the execution." *Id*., Dkt. 1425 ("Arkansas Order") at 9. The court rejected this request, writing:

> I am very sympathetic to the concerns regarding the Covid-19 crisis and all the possible effects it could have on this situation. However, I do not believe we can predict with any certainty when the Covid-19 crisis will subside. Whether the need for finality outweighs the mitigated but real Covid-19 related concerns is a judgment I prefer to leave to the elected branches of government. Congress has not suspended executions during this crisis. The Executive Branch believes it is worth moving ahead. I am not in good conscience going to substitute my weighing of the advantages and disadvantages for theirs—especially when a delay would have to be a long one to do any good.

*Id*. at 10.


## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation omitted). It is "never awarded as of right," *id*. at 690, and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). To obtain a preliminary injunction, "a plaintiff must establish that [he] has some likelihood of success on the merits; that [he] has no adequate remedy at law; that without relief [he] will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (citation and quotation marks omitted). "If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction." *Id*. (citation and quotation marks omitted). Only after a plaintiff passes this threshold must a court "weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest." *GEFT Outdoors*, 922 F.3d at 364 (citation and quotation marks omitted).

The Seventh Circuit "'employs a sliding scale approach' for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *Id.* (citation and quotation marks omitted). However, if a plaintiff cannot show a likelihood of success on the merits of his claim, "there [is] no need for the district court to conduct further analysis of the 'threshold phase' for preliminary injunctive relief, or to move to the 'balancing phase.'" *Id.* at 367-68 (citing *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018)); *see also Glossip*, 135 S. Ct. at 2737; *see also Hill*, 547 U.S. at 584 ("[I]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of *a significant possibility of success on the merits*.") (emphasis added). And a plaintiff "seeking preliminary relief [must] demonstrate that irreparable injury is *likely*," not merely possible, "in the absence of an injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). As discussed below, Lee has failed to make the requisite showing.

## ARGUMENT

## I.   LEE IS UNLIKELY TO SUCCEED IN SHOWING THAT BOP'S PROMPT SCHEDULING OF HIS EXECUTION VIOLATES THE APA IN LIGHT OF THE SEVENTH CIRCUIT'S RULING JUST HOURS AGO

Lee challenges BOP's decision to promptly schedule his execution as arbitrary and capricious in violation of the APA. But as the Seventh Circuit just recently stated in vacating the *Peterson* Order, such a claim "lacks any arguable legal basis and is therefore frivolous." *Peterson v. Barr*, No. 20-2252, Order at 4 (7th Cir. July 12, 2020) ("Vacating Order"). As relevant here, the Seventh Circuit explained, "the challenged agency action—setting a date for execution—may not be judicially reviewable *at all*." *Id.*; *see also id.* at 4-5 (explaining that the Federal Death Penalty Act and its applicable regulations "delegate broad discretion to the BOP Director to set execution dates," and that the APA "does not permit judicial review of an action 'committed to agency discretion by law'" (quoting 5 U.S.C. § 701(a)(2))). This court is bound by the Seventh Circuit's ruling and therefore, Lee's APA challenge must be denied.

7

To the extent the Court believes the Seventh Circuit's ruling is not the end of Lee's claim due to the access to counsel issue—which would be a seriously incorrect reading of the decision—that APA argument is still unlikely to succeed. First, as the Arkansas district court decision makes clear, the COVID-19 pandemic does not create circumstances that would give rise to a constitutional violation, let alone an APA violation. Arkansas Decision at 4. Second, there is "no law that would support a right to counsel throughout an execution." *The Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1117 (10th Cir. 2016). And here, Lee does not argue that his right to access claim derives from the Constitution or any constitutional amendment. Instead, he argues that he is entitled to counsel under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3596 et seq., and its implementing regulations, 28 C.F.R. § 26. Mot. at 1. This argument is also foreclosed by the Seventh Circuit's ruling.

As the court of appeals explained, "[j]udicial review under the APA is limited to persons who are 'adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" Vacating Order at 6 (quoting 5 U.S.C. § 702). "Accordingly, a plaintiff must establish that 'the injury he complains of … falls within the zone of interests sought to be *protected* by the statutory provision whose violation forms the legal basis for his complaint.'" *Id*. (quoting *Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523, 523-24 (1991)). Lee cannot show that he is entitled to counsel under the FDPA or its implementing regulations because those laws do not give him any right to demand the presence of his attorneys. *Id*. at 7. "The Federal Death Penalty Act makes no mention of witnesses, whether members of the victims' family or others." *Id*. at 7. Nor do the FDPA's regulations. *See, e.g.*, *id*. at 8 (noting, for example, that 28 C.F.R. §26.4(c)-(d) "specifies who may be permitted by the Warden to attend an execution. It is a limitation on, not an entitlement to, witness attendance"). That Lee's claim here involves his own attorneys selected by him to attend, rather than citizens selected by the Warden (as in *Peterson*), does not change the analysis. Both "citizens" and "defense attorneys" are listed in parallel provisions in the regulation, and both are subject to numerical caps: Lee may select "[n]ot more than" "[t]wo defense attorneys," just as the Warden may select "[n]ot more than"

8

"[e]ight citizens." 28 U.S.C. § 26.4(c). The regulation is thus "is a limitation on, not an entitlement to," defense-attorney attendance, and does not give those attorneys "a right to require the BOP to schedule Lee's execution at a time when they are willing or able to attend." Vacating Order at 8. If it were otherwise, BOP would have to schedule executions around the schedules of the condemned inmate's own counsel. *Cf. id.* at 8 (noting that "[n]othing in the regulation gives the plaintiffs a right to require the BOP to schedule Lee's execution at a time when they are willing or able to attend").

## II.   LEE IS UNLIKELY TO SUCCEED BECAUSE HE HAS ALREADY RAISED SIMILAR ARGUMENTS IN TWO SEPARATE FORUMS AND IS NOT PERMITTED TO CLAIM-SPLIT.

Even if Lee's APA claim were reviewable, Lee still would be unlikely to succeed on the merits for the independent reason that his claim is barred by the claim-splitting doctrine. "The doctrine of claim-splitting precludes a plaintiff from alleging claims that arise from the same transaction or events that underlie claims brought in a previous lawsuit." *Telamon Corp. v. Charter Oak Fire Ins. Co.*, No. 1:15-cv-01446, 2016 WL 67297 at *2 (S.D. Ind. Jan. 5, 2016) (citing *Carr v. Tillery*, 591 F.3d 909, 913-14 (7th Cir. 2010)). "In this sense, the rule against claim splitting is based on the same principles as res judicata and bars not only those issues that were actually decided in a prior lawsuit, but also all issues which could have been raised in that action." *Id.* Accordingly, claim splitting precludes the second claim if "(1) the second claim is based on the same transaction or occurrence as the first claim and there is (2) an identity of parties or their privies." *Id.*

Lee himself concedes that he has sought the same relief based on similar arguments in two additional actions, in one of which his argument was already rejected. *See* Mot. at 11 ("Mr. Lee has already raised concerns about his access to counsel due to the COVID-19 pandemic in at least two courts."). If Lee wants to challenge the Arkansas district court decision, he may do so before the Eighth Circuit, not through forum-shopping in this court. And he may not seek a ruling on his

9

claim in this court simply because he has not yet received a ruling on his motion before the District Court for the District of Columbia.

## III.   THE BALANCE OF HARMS WEIGHS AGAINST ENTRY OF A PRELIMINARY INJUNCTION

Because Lee has failed to establish a likelihood of success on the merits, the Court need not proceed further to consider the remaining threshold preliminary injunction factors: irreparable injury and no other adequate remedy at law. *See GEFT Outdoors, LLC*, 922 F.3d at 367-68 (noting that if a plaintiff cannot show a likelihood of success on the merits of his claim, "there [is] no need for the district court to conduct further analysis of the 'threshold phase' for preliminary injunctive relief, or to move to the 'balancing phase'"); *accord Lankford*, 2020 WL 2128580 (Magnus-Stinson, J.) (quoting same). This is consistent with the Supreme Court's application of the preliminary injunction standard in Eighth Amendment method-of-execution challenges, where an inmate's failure to establish a likelihood of success alone warrants denial of the inmate's motion to preliminarily enjoin his execution. *See Glossip*, 135 S. Ct. at 2737. Because Lee has shown no likelihood of success on the merits of his claim, the Court should follow the Seventh Circuit's lead and deny his motion for a preliminary injunction.

Should the Court proceed further, though, the balance of equities tips against issuing an injunction. First, the mere "possibility" that Lee's counsel will be exposed to COVID-19 if they attend the execution is insufficient to establish irreparable harm, because a plaintiff "seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. Given the precautions BOP has taken and will take to mitigate COVID-19, it cannot be said that Lee's counsel are likely to contract COVID-19 in the absence of an injunction. Furthermore, Lee cannot dispute the Government's overwhelming interest in the timely enforcement of criminal sentences imposed by unanimous federal juries after fair trials and upheld through extensive appellate and post-conviction proceedings in federal courts. *See Bucklew*, 139 S. Ct. at 1123. The American people have chosen to make capital punishment available in the federal system. If that decision is to be given meaningful effect, sentences must

10

be enforced in cases like this. Indefinite delay is inconsistent with the Supreme Court's teaching that "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence," *Bucklew*, 139 S. Ct. at 1133 (quoting *Hill*, 547 U.S. at 584); *see also Calderon*, 523 U.S. at 556 (explaining that once post-conviction proceedings "have run their course . . . finality acquires an added moral dimension"). "Only with an assurance of real finality can the [Government] execute its moral judgment in a case," and "[o]nly with real finality can the victims of crime move forward knowing the moral judgment will be carried out." *Calderon*, 523 U.S. at 556. *See id.* at 1134; *id.* at 1144 (Breyer, J., dissenting).

Second, Lee's motion is supremely untimely. He admittedly has tried similar arguments previously in two other courts. For him to try it again in this court the day before his execution is unwarranted, particularly given that his claim is, as the Seventh Circuit put it, "frivolous." Vacating Order at 4.

Finally, the Government's interest in implementing Lee's sentence is "magnified by the heinous nature" of his offense. *Execution Protocol Cases*, 955 F.3d at 127 (Katsas, J., concurring) (discussing Lee's crimes). Lee brutally murdered all three members of an Arkansas family, including an eight-year-old girl, by shooting them with a stun gun, duct-taping plastic bags over their heads, weighing their bodies down with rocks, and drowning them in a bayou. This sentence has been upheld throughout Lee's many years of direct and post-conviction review. His belated COVID-related claim does not outweigh the Government's interest in finally implementing the lawful capital sentence Lee incurred.

For all these reasons, the balance of equities tips against granting a preliminary injunction.

## **CONCLUSION**

For the foregoing reasons, this Court should deny the motion for a preliminary injunction.

11

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:     _s/ Shelese Woods_____
              Shelese Woods
              Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2020, the foregoing was filed electronically through

ECF/CM.  On this same date, electronic service will be made to all counsel of record through the

Court's ECF/CM system.


<u>s/ *Shelese Woods*</u>
Shelese Woods
Assistant United States Attorney


Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis,  IN 46204
(317) 226-6333
(317) 226-6125  [Fax]