****THIS IS A CAPITAL CASE****
EXECUTION SCHEDULED FOR JULY 13, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DANIEL LEWIS LEE,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM P. BARR, in his official capacity as Attorney General of the United States; MICHAEL CARVAJAL, in his official capacity as Director of the Federal Bureau of Prisons; and T.J. WATSON, in his official capacity as Complex Warden for Terre Haute Federal Correction Complex,<br><br>Defendants. | Case No. 2:20-cv-00357-JRS-DLP |

## MR. LEE'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Unless this Court acts, Mr. Lee will be executed today at 4 p.m., without counsel present, to witness and advocate for him, even though the regulations that implement the Federal Death Penalty Act ("FDPA") give him the explicit right to the presence of counsel. Counsel will be missing from the execution chamber, not because they deem their presence unnecessary or because Mr. Lee doesn't want them there, or because they don't believe it's their professional responsibility. They will be missing because they have been forced to decide between risking their health, well-being, and possibly their lives, as well as that of their families and communities, against their professional obligations to Mr. Lee.

All of this could be avoided, and Mr. Lee could be executed with counsel present, if Defendants had not made an arbitrary and capricious decision to hold his execution in the midst

1

of a once in a century global pandemic. This would be the classic definition of abuse of discretion were these circumstances not so unprecedented that nothing about this situation is "classic."

In defending its actions, Defendants assert Mr. Lee has no right to the presence of counsel.  As noted below, this is directly contrary to the position Defendants have taken in the lethal injection litigation in which they've been defending their 2019 Execution Protocol. Defendants assert that their exercise of discretion is unreviewable. The Supreme Court has said otherwise. *Dep't. of Commerce v. New York*, 139 S. Ct. 2551 (2019).  Defendants have continued to assert through this and related litigation that they can protect people entering USP Terre Haute from COVID-19.  But just this afternoon, they notified this Court and the Seventh Circuit that a staff member, who had interacted with scores of other BOP staff, been in the unit in which Mr. Lee is housed and visitors are received, has not uniformly worn his mask, had tested positive for COVID-19 and had been working while he was infectious.

Nevertheless, Defendants continue to claim they are pressing forward to protect the interests of the public, and the families of the victims. They do not account for the fact that the trial judge and the prosecutors in this case believed Mr. Lee should not be executed.  Defendants fail to consider in any way the public's interest in not spreading the virus into the prison as hundreds of people converge on it and those same people then get back on planes and bring COVID back with them to their homes, towns and loved ones.

Defendants have violated the provisions of the Administrative Procedure Act and should be enjoined from carrying out this execution.

**I.  MR. LEE IS LIKELY TO SUCCEED ON THE MERITS.**

**A.    Contrary to Defendants' Assertion, Mr. Claim Is Strong.**

2

Whatever the strength or weakness of the claims brought by the victims' family members in their suit to enjoin Defendants from executing Mr. Lee at a time when they cannot be present because of the COVID pandemic, there are two provisions in the regulations that explicitly mentions defense counsel's presence. As noted in Mr. Lee's Motion for Preliminary Injunction, the FDPA itself ensures that a death-sentenced individual has the right to counsel through all stages of post-conviction and end-stage proceedings, including requests for stays of execution and clemency. *See* 18 U.S.C. § 3599(e). Mr. Lee's right to have counsel present is also explicitly set out in the FDPA's implementing regulations. Defendants' suggestion that 28 C.F.R. § 26.4 does no more than set an upper limit on the number of lawyers he may have present at his execution is a non-starter: section 26.4(b) clearly gives him the right to in-person access to counsel in the seven days before his execution, and section 26.4(c)(ii) does not merely limit the number of counsel that the condemned could have present, it recognizes the right to have some defense counsel present.

In fact, in defending their 2019 execution protocol in lethal injection litigation, Defendants have asserted that the implementing regulations and protocol *protect* the right of the condemned to have counsel present during his execution.[1]

---

[1]  In response to the Consolidated Plaintiffs' claim that the regulations and 2019 Protocol abridge Eighth Amendment rights, Defendants gave a full-throated defense of the right of the condemned to have counsel present to protect those rights:

"The out-of-circuit district court cases Plaintiffs cite to the contrary are inapposite. See Mot. at 36-37 ¶ 113. In *Cooey v. Strickland*, No. 2:04-CV-1156, 2011 WL 320166, at *6 (S.D. Ohio Jan. 28, 2011), the court explained that it "need not and does not decide" whether a condemned inmate has a right to have counsel attend his execution because "Ohio allows counsel to witness executions regardless of whether the Constitution mandates that the state do so," and thus, the question of "the existence of any such mandate is moot." *Id*. Here, the 2019 Protocol similarly permits Plaintiffs to designate two defense attorneys to be present at the execution as witnesses. AR 1024. On the day of the execution, once the condemned inmate has been secured to the table, the condemned individual's witnesses are admitted to the witness rooms, and staff open the

**B.    The Government's Choice of Dates is Subject to Judicial Review.**

Defendants do not have unfettered discretion to choose an execution date, as they claim.

Their discretion may be wide, but it is not unreviewable.  *Dep't. of Commerce v. New York*, 139

S.Ct. 2551, 2575 (2019) ("the Census case.")  With regard to setting an execution date, at the

very least, the date chosen cannot be inconsistent with other requirements equally placed upon

the DOJ, BOP and Warden of the prison.  For example, sentences of death may only be carried

out at a federal penal or correctional institution designated by the BOP director.  The director of

the BOP could not choose a date for an execution when no federal penal institution was

operationally ready to conduct it. The director of the BOP could not say, "Let's have this

execution at Indiana State Prison, because I've chosen a date for the sake of finality and in the

public interest even though federal prisons aren't available."

---

drapes covering the windows of the witness rooms. AR 1037-39. The condemned inmate is then permitted to make a final statement. AR 1039. Witnesses, including counsel, are permitted to stay and view the execution until the pronouncement of death has been made. AR 1041-42. Nothing in the Protocol prohibits counsel from witnessing first-hand whether the execution is proceeding in such a way as to "superadd terror, pain, or disgrace." *Bucklew*, 139 S. Ct. at 1124. In *Coe v. Bell*, 89 F. Supp. 2d 962 (M.D. Tenn. 2000), which was vacated by *Coe v. Bell*, 230 F.3d 1358 (6th Cir. 2000), the state statute at issue there did not even allow for the presence of counsel at the execution. See 89 F. Supp. 2d at 963-64. Finally, in *McGehee v. Hutchinson*, No. 4:17-cv-00179 KGB, 2020 WL 2841589, at *50 (E.D. Ark. May 31, 2020), the court noted that the parties had previously negotiated terms of viewing the execution and that those same terms remained feasible. In addition, Plaintiffs here have not set forth any allegations in the Amended Complaint, or arguments in the Motion, that the Protocol prohibits Plaintiffs' counsel from communicating with the courts. In fact, BOP provides counsel witnessing the execution appropriate access to the courts. See Ex. C, Decl. of Tom Watson ("Watson Decl.") ¶ 12 ("While an inmate's attorney(s) will not be permitted to maintain their personal cell phone or other electronic devices in the witness room, if legitimate need arises (such as need to contact a court) an attorney may request the use of a phone and will have immediate access to one outside of the witness room.")." Defendants' Brief in Opposition at p. 41.

This could not be permitted because the license to exercise discretion as to one element of implementing regulations is still constrained by the requirement to protect, implement and enforce all the elements of the implementing regulations.  In this case, Defendants' right to choose an execution date is constrained by its duty to conduct an execution at a time when the individual to be executed has more than an illusory opportunity to have counsel present.[2]

Thus, the Supreme Court has instructed in the Census case that court review must be deferential to agency decision-making, but courts are

> 'not required to exhibit a naivete from which ordinary citizens are free.' *United States v. Stanchich*, 550 F.2d 1294, 1300 (2nd Cir. 1977) (Friendly, J.). The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public.  Accepting contrived reasons would defeat the purpose of the enterprise.

*Dep't. of Commerce*, 139 S.Ct. at 2575-76.  The reasons agencies give matter.  The reasons must be genuine.  Because if the courts accept reasons they know to be merely pretext, judicial review is reduced to "empty ritual."  *Id.* at 2576.

**C.     Defendants' Decision Was Arbitrary and Capricious, An Abuse of Discretion, And Not in Accordance With Law.**

The APA "'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts" and "requires agencies to engage in 'reasoned decisionmaking'." *See Dep't of Homeland Security v. Regents of the University of California*, 140 S.Ct. 1891, 1905 (2020) (internal citations omitted). Here, Defendants' decision

---

[2]  Defendants suggest this would put the BOP director in the untenable position of checking defense counsel's schedules before setting an execution date.  Not true.  This is not a matter of counsel being unable to attend an execution because of a golf game or a wedding.  Counsel is unable to attend because a national health crisis has made it unsafe and potentially lethal for *anyone* to engage in interstate travel.  These are very different matters and Defendants are disingenuous when they suggest otherwise.

to schedule Mr. Lee's execution in the midst of a resurgent pandemic was a "clear error of judgment" that should be set aside. *See id.* (internal citation omitted).

The Attorney General scheduled the first federal execution in 17 years at a time when it is both exceedingly dangerous to travel and runs counter to guidance from the federal government's own public health agency. BOP continues to suspend all visitation, including legal visits, at the entire FCC Terre Haute complex due to the dangers of COVID-19, but is now attempting to proceed with an event requiring an influx of people all at one time traveling from all over the country. Defendants failed to consider the consequences of scheduling this execution at a time when Mr. Lee's access to counsel—which is his unquestionable right—would be exceedingly difficult and effectively hampered. Indeed, their decision has interfered with Mr. Lee's "ability to obtain competent, conflicted representation," putting them in an untenable position of choosing between their client and their own health and safety. *See* Dkt. 1, Complaint, Exh. E, Declaration of Bruce Green, ¶¶ 16-18 (citing *United States v. Ky. Bar Ass'n*, 494 S.W.3d 136 (2014)).

Defendants wish to recast Mr. Lee's claim as asserting a "right to require the BOP to schedule Lee's execution at a time when they are willing or able to attend," Def. Opp'n, p. 9 (internal citation omitted), but that is a blatant mischaracterization of what is at stake: he has a well-established right to have counsel to represent him before, during, and through his execution, as required by legislative mandate, under 18 U.S.C. § 3599(e), and to have counsel be present for before and during execution pursuant to Defendants' own mandates set forth in 28 C.F.R. § 26.4. *See also, e.g., Harbison v. Bell*, 556 U.S. 180, 194 (2009); *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, 2018 WL 6529145, at *4-5 (S.D. Ohio Dec. 12, 2018). And that is the right for which he seeks redress.

Defendants have failed to engage in reasoned decision-making, *see Regents*, 140 S.Ct. 1905, regarding their July 13, which has interfered with Mr. Lee's right to counsel; at the same time there are abundant circumstances showing that Defendants failed to consider the consequences of scheduling this execution in the midst of the most devastating global pandemic in the past century. The safety measures they have purportedly offered, moreover, amount to little more than *post-hoc* attempts to deflect from their inability to protect travelers during their travels and their abject failures in keeping the ravages of the pandemic out of their prisons, including USP Terre Haute.

Indeed, just hours ago, Defendants filed a letter in the Seventh Circuit Court of Appeals, informing the Court that a staff member at USP Terre Haute had tested positive for COVID-19[3]; they also, just hours ago, filed a declaration of Rick Winter, Regional Counsel for the Bureau of Prison's North Central Region, in this Court, stating a BOP staff member at the Terre Haute prison learned on July 8 that individuals with whom he visited *last weekend* had tested positive for COVID-19.[4] That individual subsequently tested positive for the virus. In the three days he continued working after first being exposed, he (1) attended the law enforcement meeting with outside law enforcement *"in preparation for the scheduled executions;"* (2) attended a meeting regarding the handling of demonstrators *"at the scheduled executions;"* and (3) "attended to an issue at the SCU," the area of the prison in which Mr. Lee is housed and where visits take place. *See* Dkt. 1, Complaint, Exh. G., ¶ 6 (emphasis added). The declaration notes further that this staff member *"did not wear a mask at all times during this period." Id.* at ¶ 7 (emphasis added). The

---

[3] *See* Dkt. 1, Complaint, Exh. F.

[4] *See* Dkt. 1, Complaint, Exh. G (Declaration of Rick Winter, *Hartkemeyer v. Barr*, Doc. # 77-1, No. 2:20-cv-00336-JMS-MJD).

BOP assures the Court that it will continue to use screening measures including temperature checks and symptom screening – measure that, it should now be obvious – failed to detect this infectious staff member.  Defendants continue to tout these same screening measures but they are, as today's developments demonstrate, not working to protect people from the spread of this dangerous disease; and they are well understood to be insufficient: without comprehensive testing, screenings on a mere subset of individuals who will be present will be wholly ineffective in identifying any participants who are infected with COVID-19 but pre-symptomatic or asymptomatic, which is how the disease spreads. *See* Dkt. 1, Complaint, ¶¶ 53-59.

It is the definition of arbitrary for Defendants to insist on a random date of execution that so clearly poses entirely unnecessary risks both on counsel who cannot safely "be present" to do their work representing Mr. Lee—which Congress has mandated he is entitled to, and the broader public. Scheduling Mr. Lee's execution for July 13 is "not in accordance with law" because it deprives Mr. Lee of his well-established right to counsel, *see* § 3599(e), and to be present at the execution, which is a right that the BOP itself has guaranteed under § 26.4.

Defendants decision was also an abuse of discretion. They have voiced a consistent interest for the past year in press releases and pleadings – an interest in setting an execution date that is clearly pretextual.  In DOJ's press release on  July 25, 2019, announcing the first setting of Mr. Lee's execution date for December 9, 2019, Defendant Barr announced, "The Justice Department upholds the rule of law – and we owe it to the victims *and their families* to carry forward the sentence imposed by our justice system." *Federal Government To Resume Capital Punishment After Nearly Two Decade Lapse*, Press Release, Department of Justice Office of Public Affairs, July 25, 2019.  On June 15, 2020, announcing the re-setting of Mr. Lee's execution date, Defendant Barr said plainly, "We owe it to the victims of these horrific crimes,

*and to the families left behind*, to carry forward the sentence imposed by our justice system."
*Executions Scheduled for Four Federal Inmates Convicted of Murdering Children*, Press Release, Department of Justice Office of Public Affairs, June 15, 2020.  Defendants have referenced the interest of the victims' family members in at least eleven pleadings throughout the course of litigation.  *See, e.g. Lee v. Watson*, Case No. 19-3399 (7th Cir.) Doc. #3, Filed 12/06/2019, at p. 26 (arguing that the both the government *and* the victims of crime have important interests at stake); *In re Federal Bureau of Prisons' Execution Protocol Cases*, Application for a Stay or Vacatur of the Injunction Issued by the United States District for the District of Columbia, No. 19A-615 at p. 4 (S. Ct. December 2, 2019). (Government asserted it was "[a]cting on behalf of the public and the victims. . ..."). Court for the District of Columbia, No. 19A-615 at p. 4 (S. Ct. December 2, 2019). (Government asserted it was "[a]cting on behalf of the public and the victims. . ....").[5]

---

[5]  *See also, In re Federal Bureau of Prisons' Execution Protocol Cases*, Case No. 1:19-mc-00145-TSC (DC DC) Doc. #16 (Defendant's Opposition to Plaintiff Daniel Lewis Lee's Motion for a Preliminary Injunction), Filed 10/18/2019, at p. 3, 4, 45; *In re Federal Bureau of Prisons' Execution Protocol Cases*, Case No. 19-5322 (DC Cir) Doc. #1817384 (Emergency Motion to Stay or Vacate Preliminary Injunction Barring Four Federal Executions), Filed 11/25/2019, at p. 3, 9, 19, A19; *USA v. Lee*, Case No. 4:97-cr-00243-KGB (ED AR) Doc. #1355 (Government's Opposition to Movants Motion to Stay Execution and Hold Proceedings in Abeyance), Filed 12/06/2019, at p. 9, 10; *In re Federal Bureau of Prisons' Execution Protocol Cases*, Case No. 19-5322 (DC Cir) (Brief for Appellants), Filed 12/23/2019, at p. 3, 16, 49, 51; *USA v. Lee*, Case No. 19-3618 (8th Cir) (Reply Brief for the United States), Filed 01/13/2020, at p. 27, 28; *In re Federal Bureau of Prisons' Execution Protocol Cases*, Case No. 19-5322 (DC Cir) (Government's Opposition to Plaintiff's Motion to Stay Issuance of the Mandate), Filed 05/20/2020, at p. 6; *In re Federal Bureau of Prisons' Execution Protocol Cases*, Case No. 19A1050 (Supreme Court) (Response in Opposition to Application for a Stay of the Mandate Pending Disposition of the Petition for a Writ of Certiorari and for an Administrative Stay), Filed 06/15/2020, at p. 38, 40; *In re Federal Bureau of Prisons' Execution Protocol Cases*, Case No. 19-1348 (Supreme Court) (Brief for the Respondents in Opposition), Filed 06/19/2020, at p. 2a; and *In re Federal Bureau of Prisons' Execution Protocol Cases*, Case No. 1:19-mc-00145 (DC DC) Doc. #110 (Defendants Opposition to Plaintiff's Daniel Lewis Lee's Supplemental Memoranda of Points and Authorities in Support of Plaintiff's Motion for a Preliminary Injunction), Filed 06/25/2020, at p. 8.

This is clearly not the case given that Defendants have made it impossible for the family members to attend the execution.

As in the Census case, "the evidence tells a story that does not match the explanation [Defendants] gave for [their] decision. . . . We are presented, in other words, with an explanation for agency action that is incongruent with what the record reveals about the [BOP's] priorities. . . ." *Dep't. of Commerce v. New York*, 139 S.Ct. at 2575. Such an incongruity is strong evidence that the agency abused its discretion.

## II.     THE BALANCE OF EQUITIES IN THIS CASE SHARPLY FAVOR MR. LEE.

The balance of equities in this case sharply favor Mr. Lee. Defendants have, once again, summoned their "overwhelming interest in the timely enforcement" of the sentence, Def. Opp. at 10, but that assertion fails to withstand any scrutiny under the facts of this case, including their delay of years in designing an execution protocol, and their failure to explain how any such interest would be thwarted by waiting until the pandemic has subsided or the health risks have otherwise abated. The equities in his case are, moreover extraordinary—the judge who presided at his trial and sentenced him to death[6] and the lead trial prosecutor[7]—oppose his execution.

At stake, as noted, is Mr. Lee's right to have his attorneys present, free from Defendants' interference with that right, at his execution.  He is effectively being deprived of his robust statutory right to counsel, and his right to have two of his defense attorneys present at his execution as provided for by the same Defendants who are causing that deprivation.

## III.     A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST.

---

[6] *See* Exh. H, Judge Eisele letter to AG Holder and US Atty Thyer.

[7] *See* Exh. I, Letter of AUSA Stripling to AG Holder and US Atty Thyer.

The public interest has never been and could never be served by rushing to judgment at the expense of a condemned prisoner's right to having counsel present at his execution. And here, the public interest would not be served by rushing to judgment where such extraordinary circumstances and equities exist. Moreover, the worsening public health crisis will abate: delaying Mr. Lee's execution until that time, when his attorneys can safely get to him, will prevent grave, potentially fatal, health consequences to the general public as well.

## Conclusion

For the foregoing reasons, Mr. Lee respectfully requests that his Motion for Preliminary Injunction be granted.

Respectfully submitted,

/s/Amy Gershenfeld Donnella
Amy Gershenfeld Donnella
Assistant Federal Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD  20770
(301) 641-6103
(301) 344-0019 (fax)
Amy_Donnella@fd.org

/s/ John P. Nidiry_
John P. Nidiry
Staff Attorney
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD  20770
(301) 807-1267
(301) 344-0019 (fax)
John_Nidiry@fd.org

/s/ Elizabeth Brown Luck
Elizabeth Brown Luck
Staff Attorney
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710

Greenbelt, MD  20770
(301) 456-3072
(301) 344-0019 (fax)
Elizabeth_Luck@fd.org

Dated:  July 12, 2020

## CERTIFICATE OF SERVICE

I hereby certify that, on July 12, 2020, this Reply in Support of Preliminary Injunction was

filed electronically using the Court's CM/ECF system.

Respectfully submitted,

/s/Amy Gershenfeld Donnella
Amy Gershenfeld Donnella
Assistant Federal Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD  20770
(301) 641-6103
(301) 344-0019 (fax)
Amy_Donnella@fd.org

/s/ John P. Nidiry
John P. Nidiry
Staff Attorney
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD  20770
(301) 807-1267
(301) 344-0019 (fax)
John_Nidiry@fd.org

/s/ Elizabeth Brown Luck
Elizabeth Brown Luck
Staff Attorney

12

Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD  20770
(301) 456-3072
(301) 344-0019 (fax)
Elizabeth_Luck@fd.org

Dated: July 12, 2020